JOHN F. TURNER ET AL., DEFENDANTS IN ERROR, v. MARK P. WELLS ET AL., PLAINTIFFS IN ERROR.

Argued December 8, 1899—Decided March 5, 1900.

1. A building contract provided that any assignment by the builder of money due or to grow due to him on the contract should, at the option of the other party, be null and void. *Held,* that if the other party, on being notified by the assignee of such an assignment, did not object to the assignment for two months thereafter, when the assignee brought suit, the option had then expired, and the assignment was valid.

2. A building contract provided that the final payment should become due on the completion of the work and on the builder's furnishing to the other party releases of all liens and claims that might arise in the performance of the contract. *Held,* that in a suit for the final payment the plaintiff must establish by evidence, either that the releases were tendered, or that no such liens or claims existed when the suit was brought.

3. The failure of a defendant to furnish a specification of defences under his plea of the general issue, when duly demanded pursuant to section 116 of the Practice act, does not lessen at all the proof which the plaintiff must offer to establish his *prima facie* right of recovery.

On error to the Circuit Court of the county of Atlantic. This cause was tried at the September Term, 1899, of the Atlantic Circuit, before Justice George C. Ludlow and a jury, and a verdict directed for the plaintiffs below.

For the plaintiffs in error, *Thompson & Cole.*

For the defendants in error, *William M. Clevenger.*

The opinion of the court was delivered by

DIXON, J.   The circumstances of this case are as follows :
On December 20th, 1898, the defendants entered into a contract with James F. Levering, whereby Levering became
bound to supply the materials for and to do the brick and
concrete work upon a building in Atlantic City, which the
defendants had agreed to construct, and the defendants became
bound to pay him therefor $2,600 in the manner and on the
terms specified in the contract.   On March 23d, 1899, Levering executed a written assignment to the plaintiffs, to whom
he was indebted, of the moneys due and to grow due to him
on that contract, and on the same day the plaintiffs served a
copy of the assignment on the defendants, to which the latter
made no objection.   At that time Levering had not fully
completed his work, but on April 29th, 1899, the defendants
paid $45 for cleaning and pointing, which, as one of the defendants testified for the plaintiffs at the trial below, was for
finishing Levering's work.   On May 27th, 1899, the plaintiffs began this suit for the money owed by defendants as a
final payment on the Levering contract, and at the trial
proved by the testimony of one of the defendants that the
unpaid balance of the contract price was $729.46.   On this
evidence the trial justice ordered a verdict in favor of the
plaintiffs for that sum, on which direction an exception was
sealed for the defendants.   The consequent judgment is now
before this court for review.

The grounds on which the judgment is assailed are substantially twofold, the first being that by the terms of the
contract between Levering and the defendants, the assignment to the plaintiffs was invalid.

The contract provides that " the final payment   *   *   *
will be paid to the said James F. Levering, his executors,
administrators or assigns, upon, &c.   *   *   *   It is further

distinctly agreed that the said (Levering) shall not assign this contract, or any interest therein or part thereof, or any right to any of the moneys to be paid him thereunder, and that any such assignment shall, at the option of the (defendants), be null and void."

Whether, in view of the amendment of our Practice act, approved March 4th, 1890 (*Gen. Stat.*, p. 2591), which enacts "that all bills, bonds and other writing, whether sealed or not, containing any agreement for the payment of money, * * * and all other choses in action arising on contracts, shall be assignable at law, and the assignee or assignees may sue thereon in his, her or their own name," and the general rule that a contract made in contravention of a statute is void and cannot be enforced, a stipulation for the absolute non-assignability of money due or to grow due under a written contract would be valid, need not now be decided, for the present stipulation is not of that nature. Construing all the language of the provision, the meaning plainly is that an assignment would be void *at the option* of the defendants. It was valid unless they chose to annul it. The time for the exercise of their option was on March 23d, when the plaintiffs served on them a copy of it, or within a reasonable time thereafter. Their failure to do so then, or at any time before May 27th, when suit was begun, precluded its subsequent exercise. *Grigg* v. *Landis*, 6 *C. E. Gr.* 494, 509; *Burnett* v. *Jersey City*, 4 *Stew. Eq.* 341, 352.

The other ground for attacking the judgment is that the defendant, who testified to the balance of the contract price, testified also that the sum was not due Levering, because his contract was not finished. The bill of exceptions makes it manifest that the reason for thus denying the completion of the contract was the fact that no releases had been tendered under the following clause of the agreement: "The final payment * * * will be paid * * * upon a full compliance with this contract, and upon a complete release of liens for all materials furnished and for all work done, and an absolute release from claims of any kind that might result

in the performance of this contract, being furnished to and accepted by the defendants."

The plaintiffs offered no evidence that such releases had been furnished, but, on the contrary, when the defendants' counsel asked, on cross-examination, whether any releases had been furnished, the plaintiffs' counsel objected, and the question was overruled. It is thus evident that the theory on which the plaintiffs presented and the court sustained their case was that they could recover without any evidence on the subject of releases. This was an error.

The furnishing of releases is made, by the form of the contract, not an independent or collateral stipulation on the part of Levering, but an element of the basis upon which the duty of the defendants to pay is rested. The final payment is made payable only on "a full compliance with the contract, and upon a complete release," &c. To establish the obligation of the defendants to pay, the plaintiffs must prove as well the furnishing of releases as compliance with the rest of the contract. There is but one ground on which they could be absolved from this necessity, and that is the non-existence of any liens or claims to be released. Fully pleaded, Levering's claim on the defendants would be thus stated : "I have complied with the contract and have furnished the releases, and thereupon you became bound to pay ;" or else, "I have complied with the contract, and although I have not furnished releases, my justification for not doing so is that there were no liens or claims to be released, and thereupon you became bound to pay." Only by the latter form of pleading could the necessity of furnishing releases be obviated, and on this form the truth of the alleged justification must in some way appear, or Levering's claim would fail. The question therefore arises, would the non-existence of such liens and claims be presumed, or must the party alleging the non-existence prove it?

The pertinent rule of law is thus stated in *Stephen's Digest of the Law of Evidence:* "Whoever desires any court to give judgment as to any legal right or liability dependent on

the existence or non-existence of facts which he asserts or
denies to exist must prove that those facts do or do not
exist." To the same effect are other text-writers. In 5 *Am.
& Eng. Encycl. L.* (2d ed.) 28, the doctrine is thus laid down :.
"If, regardless of terms, it is borne in mind that when the·
issue is joined he has the burden of proof who seeks to·
move the court to act in his favor, the question whether the·
grounds of his claim are alleged affirmatively or negatively·
is really of no consequence. * * * Therefore, where the·
proof of negative matter is essential to the successful mainte-
nance of a cause of action, this may necessitate a negative·
averment, and the plaintiff has the burden of proving it'
because, looking at the substance of the issue as a whole, he·
must be regarded as asserting the affirmative thereof." In·
*Goodwin* v. *Smith,* 72 *Ind.* 113, Mr. Justice Elliott puts the·
matter clearly, saying : "The general rule deducible from·
the authorities may be thus stated : Whoever asserts a right
dependent for its existence upon a negative must establish
the truth of the negative by a preponderance of the evidence..
This must be the rule, or it must follow that rights of which
a negative forms an essential element may be enforced with-
out proof. This conclusion would be both illogical and un-
just, and we are therefore authorized to infer the truth of its
converse. Confusion has arisen from statements loosely made
by text-writers and sometimes by courts, but it will be
found upon examination that wherever the question has been
directly presented and considered with care, it has been uni-
formly held that wherever the petitioner's right depends upon
the truth of a negative, upon him is cast the *onus probandi*
except in cases where the matter is peculiarly within the·
knowledge of the adverse party."

The exception noticed in the last clause of the above quo-
tation has been recognized and adopted by the Supreme Court
of this state. *Greeley* v. *Passaic,* 13 *Vroom* 87, where Mr.
Justice Knapp cites supporting authorities; *Jackson* v. *Cam-
den,* 19 *Id.* 89 ; *Plainfield* v. *Watson,* 28 *Id.* 525. But this·
exception is not applicable in the present case, for the liens·

and claims which might have resulted in the performance of his contract by Levering were not matters peculiarly within the knowledge of the defendants. Rather were they, in legal contemplation, peculiarly within the knowledge of the plaintiffs, suing instead of Levering, by whom such liens and claims, if any existed, were created, and who, therefore, would be best able to prove their non-existence.

It follows that the plaintiffs were bound to establish by evidence either that they had furnished the necessary releases, or that there were no liens or claims to be released. The direction of the court that they were entitled to a verdict without such evidence, was erroneous.

But the plaintiffs contend that the defendants were precluded from interposing such an objection, because, having pleaded only the general issue, they had neglected to furnish a specification of defences within twenty days after demand, as required by section 116 of the Practice act. The consequence of such neglect is declared by the statute to be that " the defendant shall not be permitted under such plea *to give in evidence* any defence except a denial of the making of the contract sued on."

This contention is unavailing, for the question is not what the defendants shall be permitted *to give in evidence,* but what evidence are the plaintiffs required to produce, in order to make out their right to recover. The statute was not designed to detract at all from the proof which the plaintiff must offer, to establish his claim *prima facie.* Only after that is established can the statute be invoked to ward off defences which do not go in denial of the making of the contract.

The judgment must be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, LIPPINCOTT, GUMMERE, COLLINS, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH.   12.