WEST SHORE RAILROAD COMPANY ET AL., PLAINTIFFS IN ERROR, v. C. WILLIAM WENNER AND PHILIP BINDERNAGLE, DEFENDANTS IN ERROR.

Argued November 27, 1903—Decided February 29, 1904.

1. A clause in a lease, providing for a forfeiture of the term if the lessee, his successors or assigns, should fail in the performance of any covenant, condition or proviso contained in the lease which, on the part of the lessee, his executors, administrators or assigns, was to be observed, performed, fulfilled and kept, applies to covenants not to do something, as well as covenants to do something.

2. A mortgage of the lease, made by the lessee to secure his debt, followed by his failure to pay the debt at maturity and a sale of the leasehold estate on foreclosure of the mortgage, is a transfer of the estate by the lessee, in violation of a covenant not to transfer it, and a legal cause of forfeiture under the clause first above set forth.

3. The fact that the lessee died before the sale under foreclosure does not prevent the forfeiture.

4. The fact that the lessor accepted rent with knowledge of the mortgage, but without knowledge of the default or foreclosure, does not prevent the forfeiture.

5. Under the clause first above set forth, the executors of the lessee are included among his "successors."

6. Under the same clause the purchaser under the foreclosure mentioned in above paragraph 2 is an "assign" of the lessee, and a subletting by him is a violation of a covenant in the lease that the lessee, his executors, administrators and assigns will not sublet, and is a legal cause of forfeiture.

7. An objection, first raised on the argument of a writ of error, that the plaintiff failed to produce at the trial below any evidence of an essential fact, cannot prevail, if it appears that at the trial the fact was assumed without evidence.

On error to the Supreme Court.

For the plaintiffs in error, *Vredenburgh, Wall & Van Winkle.*

For the defendants in error, *John Griffin.*

The opinion of the court was delivered by

DIXON, J.  By indenture, dated August 26th, 1895, the plaintiffs leased to Simon Kelly a lot of land in Weehawken, Hudson county, for the term of ten years, from September 1st, 1895.  The lease contains the following clause:

"The said party of the second part [the lessee] for himself, his executors, administrators and assigns, does hereby covenant and agree to and with the said parties of the first part [the lessors], their successors and assigns, that the said party of the second part, his executors, administrators or assigns, or any of them, shall not nor will, at any time or times hereafter during the term hereby granted, lease, let or demise all or any part of the said premises, nor assign, transfer or make over the same or this present lease or any of his or their term of time therein, to any person or persons whomsoever, without the consent of said parties of the first part, their successors or assigns, in writing under their seal, for that purpose first had and obtained."

Another clause in the lease was as follows:

"This present lease is on this express condition, that if the said party of the second part, his successors or assigns, shall fail in the performance of any or either of the covenants, conditions or provisos in these presents contained, which on the part and behalf of the said party of the second part, his executors, administrators or assigns, are or ought to be observed, performed, fulfilled and kept, then and from thenceforth this present indenture and the estate hereby granted, and every clause, article and thing herein contained, on the part and behalf of the said parties of the first part to be performed, fulfilled and kept, shall cease, determine and be utterly void to all intents and purposes whatsoever."

On September 1st, 1896, the lessee, being in possession of the demised premises, executed a mortgage to the Lembeck & Betz Eagle Brewing Company, whereby he granted, conveyed, sold, assigned, transferred and set over to that company the said lease and all his estate and rights under the same, subject to the rents, covenants, conditions and provi-

sions in the said lease mentioned, to secure the payment of $10,000 in six months, from September 1st, 1896.

The lessee died in May, 1900, in possession of the premises.

On bill filed February 18th, 1901, in the Court of Chancery to foreclose this mortgage, the lease was, on June 18th, 1901, granted, bargained, sold and conveyed by one of the masters in chancery to C. William Wenner, who subsequently took possession of the demised premises and sublet them to Philip Bindernagle.

Afterwards the plaintiffs brought this action of ejectment in the Supreme Court against Wenner and Bindernagle, and at the trial, in the Hudson Circuit, before the learned justice there presiding, without a jury, he decided in favor of the defendants, to which decision the plaintiffs duly took exception. Upon this exception the judgment for the defendants is now brought here for review.

The first question presented for consideration is whether the lessee, even if he broke the covenant against transferring the lease, can legally be said to have *failed in the performance* of a covenant which was *to be observed, performed, fulfilled and kept* by him, within the meaning of this lease, so as to work a forfeiture, the point being that a forfeiture is to result only from a *failure to perform* a covenant, and the act of transferring the lease is not a "failure to perform."

To support the position of the defendants on this question, the decisions in *Doe* v. *Marchetti,* 1 *B. & Ad.* 715, and *Doe* v. *Stevens,* 3 *Id.* 299, are cited. Neither of these decisions is precisely in point. In Marchetti's case the right to re-enter was reserved if the lessee should make default in the performance of any covenant *after thirty days' notice,* and one of the covenants was that the lessee should not suffer any building to be erected; the lessee having erected a building, the court held that the re-entry clause was confined to covenants, for the performance of which the lessor might give the lessee thirty days' notice, and it could not be supposed that the parties intended that the lessee should be thus notified not to erect a building, and hence the re-entry

clause was not applicable. Stevens' case is more nearly parallel. There the right to re-enter was to arise if the lessee did, or caused to be done, any act, matter or thing contrary to or in breach of any covenant, and the court held that the non-performance of a covenant to repair was not doing or causing to be done any act, matter or thing.

But this case of Doe v. Stevens was disapproved in *Wheeler v. Earle*, 5 *Cush*. 31, where it was decided that the breach of a covenant "not to occupy the demised premises for an unlawful purpose" gave to the lessor a right to re-enter, which was reserved "if the lessee failed to perform and observe any covenant which on his part was to be performed," thus distinctly holding that the lessee, by doing what he had covenanted not to do, had failed to perform his covenant.

Shortly after this decision in Massachusetts the case of *Croft v. Lumley*, 6 *H. L. Cas*. 672, came before the House of Lords. There one of the covenants by the lessee was that he would not "charge or encumber" the demised premises "by mortgaging the same or granting any rent charges, or by any other encumbrance whatsoever," and a right of re-entry was reserved to the lessor if the lessee "should make default of or in the performance" of any covenants "which on his part are or ought to be performed, observed and kept." Nine judges being summoned to present their opinions to the house, one of the questions propounded to them was whether a breach of the covenant above mentioned gave the lessor a right to re-enter; and unanimously they answered in the affirmative. Mr. Baron Watson said: "It is a proper rule of construction that the object and intent of the covenant must be looked at as well as the words used," and "the proviso for re-entry would apply to and embrace negative as well as positive covenants." Mr. Baron Bramwell said: "Default in performance of covenants to be performed, observed and kept, applied to covenants not to do something, as well as to covenants to do something." Mr. Baron Martin said: "The abiding by a covenant is the performance of it; the non-abiding is a non-performance." In submitting the view of the judges to the house, Lord Wensleydale declared

himself clearly of the opinion that the right of re-entry applied to the breach of that covenant.

The language of the forfeiture clause now before us is not distinguishable from that in the case just cited, and we think the judicial construction there indicated is correct.

The next question for our consideration is whether the covenant against transferring has been broken.

The words of the covenant are very broad—"shall not lease, let or demise all or any part of the premises, nor assign, transfer or make over the same or the lease or any of the term." If the mortgage which the lessee executed on September 1st, 1896, were to have the full force which its language imports, it would clearly be a violation of the covenant, for it declares that the lessee thereby "assigned, transferred and set over" the lease to the brewing company. But in New Jersey a mortgage is deemed a mere security for the payment of the debt, leaving the entire legal estate in the mortgagor, at least until default in payment of the debt. *Sanderson* v. *Price,* 1 *Zab.* 646, note; *Thompson* v. *Boyd,* 2 *Id.* 543; *Shields* v. *Lozear,* 5 *Vroom* 496. A mortgage is not regarded as a violation of a condition against alienation. *Carson* v. *J. C. Ins. Co.,* 14 *Id.* 300; 15 *Id.* 210. But in the present case the mortgagor, the lessee, made default in payment of the mortgage debt and thus gave the mortgagee, the brewing company, an absolute right as against the lessee, either to enter upon the demised premises or to have the leasehold estate sold to pay his debt, and this latter right the brewing company exercised by the foreclosure proceedings and the sale to Wenner. Thus the act and default of the lessee, operating directly upon the lease and the estate thereunder, resulted in the transfer of the same, and that result must be deemed to have been within the contemplation of the lessee when he executed the mortgage and failed to pay the debt.

But the defendants insist that, as the mortgage itself was not a violation of the covenant, the legal consequences to which it gave rise cannot be so considered, and the decision in *Doe d. Mitchinson* v. *Carter,* 8 *T. R.* 57, is cited in support of this position. There the lessee had given a warrant of

attorney to confess judgment for a debt and, the judgment being entered, the leasehold estate was sold under execution levied thereon, and the court held that such a sale did not work a forfeiture. The same view was approved by a majority of the judges in *Croft* v. *Lumley,* 6 *H. L. Cas.* 672. But a distinction was drawn between acts of the lessee directly operating on his estate and the act then *sub judice,* which did not of its own force affect the estate. When, in Mitchinson's case, it was afterwards shown (8 *T. R.* 300) that the object of the warrant of attorney was to bring about a transfer of the lease, the lessor's claim of a forfeiture was upheld.

It is also urged that *Doe* v. *Bevan,* 3 *Mau. & Sel.* 353, carried the doctrine further and held that a transfer in enforcement of a mortgage would not forfeit the estate. But it was not so decided in that case. The question there was whether assignees in bankruptcy were the "assigns" of the bankrupt within the meaning of the re-entry clause of the lease. The court decided that they were not, and that neither the assignment by operation of law from the bankrupt to the assignees, nor the assignment which it was their legal duty to make in the administration of the estate, was within the intent of the lease. The fact that the lease had been equitably pledged for debt by the bankrupt and that the assignees were required to apply the proceeds of their assignment in satisfaction of the debt, had and could have no legal effect upon the question. But it was not doubted that, if by apt words in the condition alienation by assignees in bankruptcy or insolvency, or by legatees, or executors or administrators was forbidden, the prohibition must be enforced, as it had been in *Roe* v. *Harrison,* 2 *T. R.* 425, where the lessee's administrator had assigned.

In our judgment, a mortgage of the lease or estate carried out by the entry of the mortgagee or by a sale under the mortgage is an assignment and transfer within both the words and the intent of the covenant. We do not approve of the opposite view expressed by Judge Earl in *Riggs* v. *Pursell,* 66 *N. Y.* 193, which is at least counterbalanced by *Becker* v. *Werner,* 98 *Pa. St.* 555.

It is further contended that as the sale of the lease was not complete until after the death of the lessee, and his executors were then the legal owners of his estate, the assignment must be considered as made by them, and for that reason not covered by the condition. By the words of the lease, the forfeiture is to take place if the lessee, "his successors or assigns shall fail," &c., and the covenant on breach of which the present forfeiture is claimed is that the lessee, "his executors, administrators or assigns, or any of them, shall," &c., and so are all the covenants of the lessee. In our judgment, the term "successors," in the forfeiture clause, included executors; it seems impossible to give it any rational force which would not include them, and so the case in that respect would fall within the decision in *Roe* v. *Harrison, supra.* But we think the case must be treated as one resting on a transfer by the lessee himself. The rights of the mortgagee became complete in his lifetime, and his executors merely did not prevent the legal effect of causes which he had created.

We conclude that by the mortgage and the sale thereon to Wenner a forfeiture of the lease was established. ·

The next question arising is whether the plaintiffs, by accepting rent from the executors of the lessee, in February, 1901, waived the forfeiture.

At that time the plaintiffs were informed that the lessee had mortgaged his interest, but they had no knowledge that default had been made in payment of the debt, and the sale to Wenner had not yet taken place. It is this sale, consummating the charge imposed on the estate by the lessee, which we consider as the violation of the covenant and the legal cause of forfeiture. The receipt of rent could, of course, not be a waiver of a forfeiture thereafter occurring.

Lastly, the defendants urge that the plaintiffs failed to prove that the assignment of the lease was without the consent of the lessors, in writing under seal, insisting that the burden of proving even the negative was on the plaintiffs claiming a forfeiture. See *Toleman* v. *Portbury, L. R.,* 5

*Q. B.* 288; *Turner* v. *Wells,* 35 *Vroom* 269. But the bills of exception indicate that, even if no evidence of such non-consent was offered, the case was tried upon the theory that no consent had been given, and if objection had been then made to the absence of such testimony the lack might have been supplied. The defect, if it exists, should not now be made the basis of our judgment.

Another question is presented, whether the subletting by Wenner to Bindernagle would not of itself work a breach of the covenant and a forfeiture of the lease, even if the assignment under the mortgage had been consented to or forfeiture therefor waived.

We have no doubt that for general purposes Wenner is an assign of the lessee, and as such bound by the covenants which run with the land. But in *Dumpor's Case,* 4 *Rep.* 119, it was resolved that, if under a condition not to alien without license a single alienation be licensed, the condition is absolutely at an end; and such was admitted to be the law in England until changed by statute. 22 and 23 *Vict., c.* 35; 23 and 24 *Id., c.* 28; 1 *Sm. Lead. Cas.* 91.

If the subletting to Bindernagle were deemed a violation of the covenant against assigning, and the condition of forfeiture arising from a violation of that covenant had been discharged with respect to the assignment to Wenner, then, under Dumpor's case, it could not be enforced for the letting to Bindernagle. But it has been settled, on sound reasoning, that the assignment of a lease and subletting for part of the term are totally distinct transactions, so that a covenant against one does not include the other. *Field* v. *Mills,* 4 *Vroom* 254. Hence the subletting to Bindernagle was the first violation of the covenant not to let the demised premises, and the right to re-enter for that violation appears in no way to have been discharged. If not consented to by the lessors, they are entitled to recover possession for that breach.

The judgment of the Supreme Court should be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY.   13.