DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW-JERSEY,

### AT APRIL TERM, 1849.

---

### THOMPSON v. BOYD.

1. A widow is dowable of an equity of redemption, the mortgagor being considered as the legal owner, except as against the mortgagee, and those claiming under him, and the *mere assignee* of the husband is concluded from denying his seisin.
2. But she cannot claim dower at law against the mortgagee or his assigns, where the mortgage was before coverture, and the equity of redemption has been united by release or conveyance to the legal title of the mortgagee. *Semble*, the only remedy of the widow in such case is in equity on bill to redeem *pro tanto*.
3. The assignee of the mortgagee purchased the equity of redemption of the executors of the husband, who sold the land under the authority of a private act, which directed the proceeds of the sale to be first applied to the discharge of the mortgage. The conditions of sale were, that the executors would give a title to the land free of encumbrance, but the holder of the mortgage, who purchased at the auction sale, paid only the balance over the amount due on the mortgage, from which he released the executors, and insisted on retaining the mortgage as a muniment of his title. *Held*, that the mortgage was not satisfied or extinguished; that he held by virtue of the mortgage, and that the widow was not entitled to dower.

---

Error to Warren Circuit Court.

This was an action of dower, brought in the court below by Nancy Thompson, widow of Robert Thompson, deceased, against James Boyd. The demandant claimed dower in a farm

of 225 acres, in said county, in the possession of the defendant. The tenant pleaded that the husband was never seized of the premises during coverture. The cause was tried in the Circuit Court, August, 1844, before Mr. Justice Nevius, when a verdict for the demandant was taken by consent, subject to the opinion of the court (after advisement with the Supreme Court), whether, upon a case stated, she was entitled to recover. If the court should be of opinion, upon the acts as stated, that she was entitled to recover, then judgment accordingly ; if otherwise, then the verdict to be set aside, and judgment entered for the defendant: either party, if dissatisfied with the judgment of the court, to have liberty to turn the case into a special verdict, and to bring a writ of error.

The Circuit Court, after advisement with the Supreme Court, set aside the verdict, and gave judgment for the defendant. See 1 *Zabriskie* 58, where will be found the reasons assigned for the judgment below.

The material facts are as follows : James Thompson, the father of the demandant's husband, was owner of the premises out of which dower is claimed, and on February 17, 1817, mortgaged them to one Thomas Shields, to secure the payment of $3217. James Thompson died in 1825, leaving this mortgage unsatisfied. By his will, dated in 1823, he devised all his real estate to his two sons, Robert, the husband of the demandant, and William. A copy of the will has not been furnished with the state of the case, and its phraseology cannot be given, and it does not seem material, upon the grounds on which the case was decided. But it was said, that the premises in question were devised to them in such proportion as they should pay off the mortgage; and it was urged on one side, that, by the terms of the devise, the payment of the mortgage was a condition precedent to the vesting of the estate.

William first occupied the premises after his father's death, but paid no part of the mortgage, and on the 9th of November, 1826, released all his right therein to his brother Robert, the husband of the demandant, who then entered into possession, and subsequently made considerable payments, by way of interest, on the mortgage. Robert died January 4, 1831,

leaving the mortgage still outstanding and unpaid. By his will, dated December 26, 1830, he directed and empowered his executors to sell certain other parts of his real estate ; but this provision of the will was supposed not to include the lands in question.

The executors, entertaining doubts as to their power to sell this farm, either under the authority of the will or under an order of the Orphans' Court, applied to the legislature for the necessary power. An act was procured to be passed, which, after reciting the supposed situation of the property, enacted, in substance, as follows : That the said executors of Robert Thompson, deceased, should be authorized to sell and convey, by deed in fee simple, the lands, &c., so devised by the said James Thompson to the said Robert and William, and that their deed should vest in the purchaser as good and perfect an estate in fee simple as the said Robert was seized or possessed of at his death. The act further directed, that the executors should appropriate and apply so much of the proceeds of the sale as should be necessary for the purpose, to the extinguishment of the said mortgage, and the residue should be assets in their hands, and applied to the payment of the debts of the said Robert Thompson, deceased, as other personal assets, and should be accounted for in the same manner. *Act March* 13, 1832, *Pamph. Laws* 153.

The executors proceeded to sell under the authority of this act. The conditions of the sale, as previously announced, were, that the property should be sold clear of encumbrance, and the mortgage extinguished by the executors. The property was struck off to the defendant for $3274, the amount then due on the Shields mortgage being about $3150.

Previous to this sale, Boyd, the purchaser, had become the owner of the Shields mortgage, and of the debt which it was intended to secure, the bond and mortgage having been regularly assigned to him by Shields and the prior holders. Boyd also held, at and prior to the time of the purchase, a second mortgage, which had been given by James Thompson to Shields, upon another farm, as additional and collateral security. Upon consummating the sale by a conveyance, Boyd

declined to deliver up and cancel his first mortgage, but declared his intention to hold it as a muniment of title. He offered to deliver up and cancel the second mortgage, and release to the executors all claim and demand upon the estate, which was accordingly done. In the release he acknowledged that he had received the sum of $3150.09, the amount due on the mortgage, and paid to them $120.16, the balance of the purchase money in cash, declaring, in the same instrument, that, with the assent of the executors, he held the said mortgage as a muniment of his title to the lands so purchased. The executors, when they settled their account with the surrogate, charged themselves with the full amount of sale, and craved and obtained an allowance for the amount due on the Shields mortgage, from which the estate had been relieved, in the mode just stated.

On the trial, the tenant relied on his title under the Shields mortgage, as a defence against the claim of the demandant.

*B. Williamson* and *Dayton*, for the demandant.

The will of James Thompson, after a disposition of some other property in favor of his daughter, recites the bond and mortgage, and then devises the premises in which dower is claimed to the two sons, upon a request and condition that they would discharge the mortgage. They took the property in fee simple, subject to the mortgage: the whole subsequently became vested in Robert. It is a mistake, in the preamble of the private act, that the payment was a condition precedent to the vesting of the estate; the devise was in fee, charged with the payment of the mortgage debt.

But the sale was made to convey the title of Robert Thompson, by virtue of the act, and for the express purpose of extinguishing this mortgage. The purchaser only took what the executors were authorized to sell, the right of Thompson subject to the mortgage, which, when extinguished, left the right of dower unaffected. The executors were not authorized to sell the right of dower, and they were bound to satisfy the mortgage from the proceeds. If the sale had been to another person, there could have been no question made. When the

Thompson v. Boyd.

mortgagee is in under the mortgage, and then the equity of re-demption is conveyed to him, he really holds by his mortgage. But even then it depends upon the circumstances. Here Boyd was not in possession. He got possession under the husband, and cannot, therefore, set up his mortgage. See the cases cited by Justice Randolph, 1 *Zabr.* 64. the conditions of the sale were, that the property was sold clear of the mortgage, and it brought a full price clear of the mortgage.

But this defence cannot be set up under the general plea of *ne unques seisie.* A mortgage can only be set up by special plea, as in the case of outstanding leases or encumbrances.  8 *Petersd. Abr.* 486; 2 *Saund.* 44; 3 *Powell on Mort.* 1089. The legal seisin is in the mortgagor; and when it was so settled by *Montgomery* v. *Bruere* then it became necessary to set up a mortgage by special plea. In *Ashton* v. *Florence,* an attorney of great experience, on these considerations, thought it necessary to resort to a special plea, and which will be found on the files of the Supreme Court.

[It was suggested by a member of the court, that the question, if any thing in it, was hardly open in this case; that the de-mandant's right to recover by the consent at the trial, was placed upon the facts stated, and not on the form of the plea.]

The counsel of the demandant examined, and questioned the case of *Woodhull* v. *Reid,* 1 *Har.* 128.

*Wurts* and *Vroom,* for the tenant.

The attempt is to set aside the well settled doctrine of this state, as to dower in mortgaged premises. The mortgagor is seized as against every one but the mortgagee; as against him, or any one holding under him, he is not seized, and the general plea is therefore sufficient for one standing in the position of the tenant in this action.

But Robert was never seized of any legal estate in the pre-mises, not having performed the precedent condition of paying off the mortgage, a condition imposed for the benefit of the rest of the estate, upon which it was also an encumbrance.

The mortgagee took the land for the debt, and held it by his

mortgage deed, the equity of redemption simply having been conveyed to him by the executors.

There is nothing in the act to prevent such an arrangement, otherwise undoubtedly in conformity with the rights of the purchaser. The only object of the direction, as to the proceeds, was to relieve the rest of the estate. But in point of fact the executors could only sell the equity of redemption. Had any other person purchased, he must have used diligence to get clear of the mortgage, and procure the performance by the executors of their collateral agreement to discharge the encumbrance. They cited *Woodhull* v. *Reid*, 1 *Har.* 128 ; *Hartshorne* v. *Hartshorne*, 1 *Gr. Ch. R.* 349 ; *Hinchman* v. *Adm'rs of Emans, Saxton* 100 ; 4 *Kent* 44,˙ 45 ; *Van Dyne* v. *Thayre*, 19 *Wend.* 168 ; *Dexter* v. *Harris*, 2 *Mason* 529.

CARPENTER, J., delivered the opinion of the court.

We have not been furnished with a copy of the will of James Thompson, but, if I rightly comprehended the statements of counsel in regard to the devise to his two sons, I suppose they took a fee simple in the premises subject to the Shields mortgage, and charged with its payment. The doubts suggested in the preamble of the act empowering the executors to sell, were but the suggestions of those who procured that act, and are not entitled to any special consideration. The conveyance or release by William to Robert vested in the latter the whole estate subject to the encumbrance. It will be assumed that Robert was seized, during coverture, of an estate in fee simple subject to the mortgage, and that the wife was dowable in the premises, unless barred by the special matter set up by the tenant.

Since the case of *Montgomery* v. *Bruere*, it has been considered as settled law in this state, that a widow is dowable of an equity of redemption, the mortgagor being considered as the legal owner, except as against the mortgagee, and those claiming under him, and the *mere assignee* of the husband by conveyance after marriage is concluded from denying this seisin. But it is otherwise in regard to the mortgagee. As against him, or those claiming under him, the law is equally

well settled that the mortgagor is not so seized as that the widow, where the mortgage was before coverture, can claim dower. The wife's dower must yield to the superior title of the mortgagee, for (says Chancellor Kent), as against the title under the mortgage, the widow has no right of dower, and the equity of redemption is entirely subordinate to that title. 4 *Kent* 45 (*5th ed.*) As against the mortgagee there is no seisin, which seems an answer to the technical objection to the form of the plea, though that objection, in this case, is excluded by the terms of the consent upon which the verdict was taken below.

The mortgagee holding, as against the mortgagor, the legal title, subject only to the condition or equity of redemption, may unite that equitable interest to his legal title, either by foreclosure or by the voluntary release or conveyance of the mortgagor. Such union of the legal and equitable estate extinguishes, or, as the phrase is, merges the equitable in the legal estate, and the latter becomes absolute. The estate which was before a fee simple, is still the same, but it is relieved of the condition or equity with which it had been previously encumbered. If by foreclosure, the condition is gone for all purposes, and the estate is absolute in the mortgagee. If by conveyance, it is so at law, and if the widow has any right, it is only in equity to redeem *pro tanto.* In such case the mortgagee does not hold under the subsequent conveyance, but under the mortgage, and, the equity of redemption being extinguished, his title is paramount to the dower title of the wife. It is an entirely different case where, the mortgage having been discharged, the tenant can rely only on the title derived from the husband. He who claims under the husband by conveyance during coverture will hold subject to the wife's dower.

But, if such be the law, still it is urged that this case stands on special grounds, which distinguish it from the general rule. It is said that the sale by the executors was under the authority of a statute, which specially directed the proceeds of the sale to be applied to the discharge of the mortgage, and that the conditions of the sale actually were, that the conveyance should be clear of encumbrance. But we do not conceive that

the authority so to dispose of the proceeds can affect the title of the mortgagee. The mortgage was an encumbrance upon another part of the estate, which it was desirable to relieve by this sale. The authority so to dispose of the proceeds was necessary to effectuate the object. That the property, therefore, should be sold clear of encumbrance, was properly made a condition, and which would have been important, had the sale been made to any third person. The executors could not affect, by their sale under the authority of the statute, the title of the mortgagee, and it would have been important for such third person, had he purchased, to see to it, that the collateral agreement was duly performed and the mortgage extinguished by payment. But it may have been, and probably was impossible to make a satisfactory sale to a third person, with the additional difficulty as to the widow's dower, which would intervene upon the discharge of the mortgage. In either case, whether the sale should be to the mortgagee or to a third person, the title to be conveyed by the executors was but the interest which had been held by Robert Thompson previous to his decease, and which was merely an equity of redemption. When that interest was purchased by the holder of the mortgage, the collateral agreement to discharge the mortgage became not merely immaterial and unnecessary, but inconsistent with his rights. He insisted, as he lawfully might, that he would not relinquish the estate which he already had, but that he would hold his mortgage as a muniment of title of land taken, not in payment, but in substitution for his debt. He received a conveyance of the equity of redemption, but he chose to hold his prior paramount title; and the executors assented, receiving from him a release of the bond and mortgage, in which he declared, that he so held the mortgage, and his purpose not to relinquish it. However the executors may have chosen to state their accounts, in fact he paid but $120.16 for the release of the equity (all that the executors could convey), which equity he thus extinguished by merger in his legal title.

It is difficult to see how the prior or subsequent acquisition of the legal title under the mortgage can affect the doctrine of merger, which is said to be inflexible at law. Merger is said

Thompson v. Boyd.

by Mr. Preston, to be the conclusion of law upon the union of two estates : merger, or in other words extinguishment, is the effect, while union is the cause. It takes place when a greater and less estate coincide and meet in one and the same person, and an instance given is, when tenant for years obtains the fee ; so when legal and equitable estates unite, the equitable must merge in the legal. But it is the union of the two estates which is described as causing this result, and which seems to owe nothing to the mere order of acquisition of those estates. There is, however, nothing in the case itself which makes it necessary to decide whether one who holds the equity of redemption by conveyance, mediate or immediate from the husband, can protect himself from dower by the *subsequent* purchase of a prior mortgage. (a) This question, though discussed as part of the general doctrine, is not raised by the case. The present seems to be the plain case of the equity of redemption united by purchase to the prior legal title of the mortgagee, and thus extinguished at law.

The judgment must be affirmed.

Judgment affirmed—*Ayes*, CARPENTER and OGDEN, Justices, and WALL, PORTER, SPEER, SINNICKSON, SCHENCK, and MC-CARTER, Judges—8.

*Nays*—None.

The CHIEF JUSTICE and Justices NEVIUS and RANDOLPH did not hear the argument, and therefore expressed no opinion. The chancellor did not vote.

(a) The rule treated of in the judgment of the court is the technical application at law of the common law doctrine of merger or extinguishment, which takes place on the union of two incompatible estates in the same person. To the cases cited may be added, *Den* v. *Van Ness*, 5 *Halst.* 106 ; *Cooper* v. *Whitney*, 3 *Hill* 95. But the view taken by the court upon the point here mooted seems to derive some support from the rule held in courts of equity. Payment of the mortgage debt by the mortgagor must extinguish the lien, but such is not necessarily the result of payment by a purchaser of the equity of redemption. If the latter, in such case, take an assignment of bond and mortgage given before marriage, it has been held that the widow will be entitled to dower in the equity of redemption only, subject to the mortgage. *Hartshorne* v. *Hartshorne*, 1 *Gr. Ch. Rep.* 356 ; *Russell* v. *Austin*, 1 *Paige* 193.

CITED in *Den* v. *Brown*, 2 *Dutch.* 204 ; *Duncan* v. *Smith*, 2 *Vr.* 325 ; *Chiswell* v. *Morris*, 1 *McCar.* 103 ; *Eldridge* v. *Eldridge*, *Id.* 198.