64 N.J. Super. 364 (1960)
165 A.2d 854
ISIDORE FELDMAN, PLAINTIFF AND THIRD-PARTY PLAINTIFF,
v.
URBAN COMMERCIAL, INC., AND OTHERS, DEFENDANTS.
ISIDORE FELDMAN, THIRD-PARTY PLAINTIFF,
v.
THE TITLE GUARANTEE COMPANY, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided November 28, 1960.
*367 Messrs. Brogan & Wolff, attorneys for plaintiff (Mr. Henry F. Wolff, Jr. of counsel).
*368 Mr. Joseph A. Davis, attorney for defendant Jersey City Redevelopment Agency.
Messrs. Carpenter, Bennett & Morrissey, attorneys for third-party defendant (Mr. Elmer J. Bennett, of counsel).
KILKENNY, J.S.C.

PRELIMINARY STATEMENT.
This is an action in equity instituted by Isidore Feldman to foreclose a mortgage held by him on the Commercial portion of the St. John's Project Area in Jersey City, title to which is vested in Urban Commercial, Inc. In this action Feldman joined, among others, the Jersey City Redevelopment Agency. The Agency counterclaimed for a declaration that the mortgage is null and void for the reason that it is in violation of deed restrictions and federal and state law. Feldman thereupon filed a third-party complaint against The Title Guarantee Company, the insurer of the mortgage.
By written stipulation, the parties to this action have submitted an agreed statement of certain facts and have presented two questions for determination by the court, as upon motion and cross-motion for partial summary judgment. Each party has expressly reserved other factual and legal issues so that entire resolution of the whole controversy by final judgment is not possible at this time. The decision herein is thus necessarily limited to the particular questions propounded upon the basis of those facts only upon which there is no dispute.

I. THE FACTS.
The stipulation of facts provides as follows:
"1. Prior to October 25, 1955, Jersey City Redevelopment Agency, (hereinafter called `Agency') proceeding under authority of the provisions of Title I of the Housing Act of 1949, as amended, *369 42 U.S.C.A. § 1441, et seq., and of the Urban Redevelopment Law, R.S. 40:55C-1, et seq., acquired the fee simple title to a tract of land in the City of Jersey City, which tract is commonly known and described as the St. John's Project Area, hereinafter called the Project Area.
2. On October 25, 1955, Urban Developers, Inc., (hereinafter called `Developers') entered into a redevelopment contract with Agency which contract relates to the proposed redevelopment, by Developers of the St. John's Project Area (hereinafter called the Project Area) in the City of Jersey City.
Said contract shall be received in evidence as Ex. 1.
3. On June 11, 1956, Agency, in accordance with its undertakings as set forth in Ex. 1, conveyed two parcels of land lying in the Project Area to Developers.
3A. The first parcel of land so conveyed formed a part of the Project Area which was required to be redeveloped as a residential area. The first parcel (which contained 118,381 square feet or 2.718 Acres) was known, inter partes, as `Section I of the Residential Area' (hereinafter called `Section I'). The deed of conveyance for Section I was recorded on June 13, 1956 in Book 2679 of Deeds for Hudson County at page 45, etc.
A copy of said deed shall be received in evidence as Ex. 2.
3B. The second parcel of land so conveyed was the only part of the Project Area which was required to be redeveloped as a business area. The second parcel (which contained 172,389 sq. ft., or 3.96 Acres) was known, inter partes, as the `Business Area'. The deed of conveyance for said parcel was recorded on June 13, 1956, in Book 2679 of Deeds for Hudson County, at page 49, etc.
A copy of said deed shall be received in evidence as Ex. 3.
4. On June 11, 1956, Developers, by letter of even date, requested Agency's permission to reconvey the Business Area to Urban Commercial Inc. (hereinafter called `Commercial').
A copy of said letter shall be received in evidence as Ex. 4, it being hereby agreed and stipulated that said letter was authorized to be written by proper corporate action and authority.
4A. On June 11, 1956, Commercial, by letter of even date, informed Agency of its intention to take title to the Business Area; that it was aware of the terms of the contract, Ex. 1, and that it assumed all of the obligations therein set forth.
A copy of said letter shall be received in evidence as Ex. 5, it being hereby agreed and stipulated that said letter was authorized to be written by proper corporate action and authority.
4B. On June 11, 1956, Agency, upon receipt of Exhibits 4 and 5, consented to the transfer of the Business Area from Developers to Commercial, and its consent is evidenced by a resolution of Agency incorporated in Agency's minutes of a special meeting held on June 11, 1956.
A copy of said minutes, in their entirety, shall be received in evidence as Ex. 6 as evidence of Agency's formal action on June 11, *370 1956, with relation to its transactions of that day concerning the Project Area.
4C. On June 11, 1956, Developers, pursuant to Agency's consent, as above set forth, by deed of even date, did reconvey the Business Area to Commercial, by deed recorded on June 13, 1956, in Book 2679 of Deeds for Hudson County, at page 53, etc.
A copy of said deed shall be received in evidence as Ex. 7.
5. On June 11, 1956, Commercial executed and delivered a mortgage note covering the Business Area, in the face amount of $450,000., `or so much thereof as may be advanced,' to Isadore Feldman (the plaintiff herein), which mortgage note was secured by a mortgage of even date. The mortgage was recorded on June 13, 1956 in Book 2431 of Mortgages for Hudson County, at page 157, etc.
The originals of said mortgage note and mortgage shall be received in evidence as Exs. 8 and 9, respectively, it being hereby agreed and stipulated that said mortgage note and mortgage were authorized to be executed and delivered by proper corporate action and authority.
5A. Agency did not give its formal prior written consent to the making of plaintiff's mortgage.
6. On June 11, 1956, plaintiff had actually advanced, on account of the principal sum of the mortgage note and mortgage, the sum of $250,000. The amount so advanced is evidenced by a check for $250,000., drawn on the account of Feldman and Farmer Special, to the order of Isadore Feldman, which check was endorsed over to, and received by, Agency (together with an additional sum of $62.20) as the consideration for the conveyances of Section I and the Business Area as hereinabove recited in Pars. 3, 3A and 3B.
Said check shall be received in evidence as Ex. 10.
7. Thereafter, plaintiff made additional advances on account of the principal sum of mortgage note and mortgage as follows:

 August 22, 1956 ......................... $5,000.
 September 24 ............................ 5,000.
 September 26 ............................ 30,000.
 September 26 ............................ 5,000.
 October 26 .............................. 35,000.
 October 30 .............................. 12,000.
 November 21 ............................. 500.
 December 11 ............................. 1,000.
 December 14 ............................. 6,500.
 _________
 Total ................... $100,000.

Each of said additional advances was evidenced by a check of the date and in the amount indicated above and the nine checks shall be received in evidence as one exhibit and marked Ex. 11.
8. Each of the checks representing the additional advances referred to in Par. 7 above was made payable to the order of Developers *371 and by it deposited in the checking account maintained by Developers in the Manufacturers Trust Company (Branch #4) 481-8th Ave., New York, New York.
9. On September 26, 1956, November 13, 1956, and on an unascertained date in December, 1956, Commercial executed three documents reciting that the several additional advances had been made by plaintiff, to Developers, `for and on behalf of' Commercial.
The three documents shall be received in evidence as one exhibit and marked Ex. 12.
10. Prior to April 2, 1958, plaintiff's mortgage was past due and was in default both as to principal and interest. On April 2, 1958, plaintiff entered into an extension agreement with Commercial, extending the due date of plaintiff's mortgage to January 11, 1959. By the terms of said extension agreement Commercial agreed that the amount of principal to become due on January 11, 1959 should be increased from $350,000. to $392,000.
A copy of said extension agreement shall be received in evidence as Ex. 13.
11. The Complaint herein was filed on October 23, 1959; the Notice of Lis Pendens was filed on October 27, 1959.
12. At the time of the filing of the Complaint, Commercial was in default of its obligations to pay the principal and interest due thereunder, and in the payment of municipal taxes against the mortgaged premises.
13. On February 12, 1959, Developers and Commercial were in default of their obligations as fixed by Par. 3.3 of the contract of October 25, 1955 (Ex. 1), and of the following covenant contained in the deeds which are Ex. 3 and Ex. 7.
`The party of the second part promises to complete all of the buildings and improvement in the above described premises of the Project Area within thirty-two (32) months from the date of this conveyance.',
and this default has continued to, and still exists, at the present time. On said date plaintiff knew that all of the building and improvement in the premises had not been completed.
14. On March 20, 1959, Agency adopted a resolution declaring Commercial to be in default of its obligations referred to in Par. 13 above.
A copy of said resolution shall be received in evidence as Ex. 14.
15. A certified copy of Ex. 14 was sent, by registered mail, return receipt requested, to Commercial on March 23, 1959, and received by it.
16. No notice of default was given to plaintiff prior to August 27, 1959. On August 27, 1959, a copy of Ex. 14 was furnished to Brogan & Wolff, attorneys for plaintiff, by Agency's counsel.
17. On July 22, 1959, Agency purchased all of the right and interest of Developers (then operating under the changed corporate title of Colonial Developers, Inc.) in the contract of October 25, *372 1955, Ex. 1, at an execution sale conducted by the Sheriff of Hudson County.
A copy of the Sheriff's Bill of Sale shall be received in evidence as Ex. 16."

II. THE LEGAL QUESTIONS.
The parties have stipulated the following questions of law for determination by the court:
"A. Whether the mortgage transaction between Commercial and plaintiff was a transfer or conveyance in violation of the terms, conditions and covenants of the contract and deeds entitling Agency to compel a reconveyance of the premises to it. unencumbered by any lien of plaintiff's mortgage?
B. Whether the default against the terms, conditions and covenants of the contract and deeds relating to the time for completion of construction entitles Agency to compel a reconveyance of the premises to it, unencumbered by any lien of plaintiff's mortgage?"

III. DECISION.
A. The answer to question A is a definite "No," especially at this time.
B. The answer to question B is a qualified "Yes," but subject to an equitable lien against the property in favor of plaintiff to the extent that his money has been used for the acquisition and retention of this property.

IV. REASONS FOR CONCLUSIONS.

(a) As To Question A.

The "mortgage" under foreclosure was not such a "transfer" or "conveyance" in violation of the terms, conditions and covenants of the contract and especially deeds as would entitle Agency at this time to compel a reconveyance of the premises to it, unencumbered by any lien of plaintiff's mortgage.
The pertinent restrictive covenant in the deed from the Agency to the Developers (Ex. 2) provided as follows:
*373 "The party of the second part, for itself, its successors and assigns further covenant not to sell, lease, transfer or convey any of the land and premises hereinbefore described prior to the actual completion of all of the buildings and development operations as provided in the said Redevelopment Plan and pursuant to the agreement between the parties herein without prior written consent of the party of the first part, its successors and assigns."
We note at the outset that the words "sell, lease, transfer or convey" do not expressly prohibit a "mortgage."
We recognize that, in form and under common law interpretation, a mortgage, in New Jersey, has been held to be in the nature of a "transfer or conveyance" of the legal title from the mortgagor to the mortgagee, subject to a re-vesting of title in the mortgagor upon payment of the mortgage. R.S. 46:9-1; Thompson v. Boyd, 22 N.J.L. 543, 549 (E. & A. 1849); McMahon v. Schoonmaker, 51 N.J. Eq. 95, 98 (Ch. 1893); Colton v. Depew, 60 N.J. Eq. 454, 458 (E. & A. 1900); Provident Mutual Life Ins. Co. of Philadelphia v. Doughty, 126 N.J. Eq. 262 (Ch. 1939); Jaffe v. Zilinski, 14 N.J. 24 (1953); Puritan Dairy Products Co. v. Christoffers, 54 N.J. Super. 102 (Ch. Div. 1959).
However, it is also well established in this State that "the legal estate of the mortgagee," before any default in the mortgage, does not entitle the mortgagee to possession of or any immediate estate in the land. After default, he may foreclose in equity and may also bring an ejectment action at law. Camden Trust Co. v. Handle, 132 N.J. Eq. 97, 101 (E. & A. 1942). In its substance, the mortgage is essentially a security for payment of a debt. Sears, Roebuck & Co. v. Camp, 124 N.J. Eq. 403 (E. & A. 1938). The maxim, "Equity looks at the substance, rather than the form," justifies the conclusion that while a mortgage is technically a transfer of legal title, it is not, before a default, such a transfer or conveyance in substance and in equity as to come within the restrictive covenant in this case. By analogy, in insurance law, a mortgage is not within the "change of ownership" provision in an insurance policy. *374 Conover v. Mutual Insurance Co., 1 N.Y. 290 (Ct. App. 1848); Judge v. New York Bowery Fire Insurance Co., 132 Mass. 521 (Sup. Jud. Ct. 1882); Bryan v. Traders Insurance Co., 145 Mass. 389, 14 N.E. 454 (Sup. Jud. Ct. 1888). If the grantor had wished to preclude a "mortgage" per se, it could have incorporated that word expressly and very simply in its deed of conveyance. Restrictive covenants are construed most strictly against the covenantee, Drachenberg v. Drachenberg, 142 N.J. Eq. 127 (E. & A. 1948); Riverton Country Club v. Thomas, 141 N.J. Eq. 435, 1 N.J. 508 (1948), especially where it will tend to work a forfeiture. Carpender v. City of New Brunswick, 135 N.J. Eq. 397 (Ch. 1944).
We find support in this conclusion in the fact that the evidence clearly indicates that the parties contemplated the need of mortgage financing and expressly excepted mortgages from the covenant. Paragraph 3.2(f) of the contract provides "that the Redeveloper contemplates securing a mortgage and the Agency agrees that the execution of such mortgage or mortgages shall not be deemed a violation" of the prohibition against sale or transfer. While there is some dispute as to whether such mortgaging would be limited to construction mortgages and mortgages upon completion of the buildings, which is the fair inference, the very fact that any mortgage was expressly or impliedly sanctioned indicates that the restriction against a sale, lease, transfer or conveyance did not comprehend the mere making of a mortgage. Furthermore, the rule of "ejusdem generis" suggests the non-inclusion by implication of the word "mortgage" in the express verbal sequence "sell, lease, transfer or convey."
Agency relies upon West Shore R. Co. v. Wenner, 70 N.J.L. 233 (E. & A. 1903), in which an agreement not to "assign, transfer or make over" a lease was held to be violated by a lessee, who "mortgaged" the lease as security for a debt and then defaulted in the mortgage, the actual sale thus resulting in a "transfer" of the lease. But the court stated that a mortgage is merely security for the *375 debt "at least until default in payment of the debt," and affirmed that "A mortgage is not regarded as a violation of a condition against alienation." However, the court concluded that the mortgage "and default of the lessee, operating directly upon the lease and the estate thereunder, resulted in the transfer of the same, and that result must be deemed to have been within the contemplation of the lessee when he executed the mortgage and failed to pay the debt." (Emphasis added) In effect, therefore, a mortgage plus an execution sale upon default effects by a two-step procedure a "transfer" of the property. Certainly, a grantee who is prohibited from directly transferring the property may not do so indirectly by first mortgaging it and then defaulting. The net result is the same in the light of the purpose for which the original grant was made. See, in accord, 6 American Law of Property, § 26.35, holding that a covenant against "transfer" or "conveyance" usually embraces also the involuntary transfer. Otherwise "the conveyee can evade the restraint by the simple expedient of incurring a debt, and permitting the creditors to recover judgment, and sell the property under execution."
Under our federal and state laws applicable to an Urban Redevelopment Agency, procedures have been set up for the elimination of blighted areas and their redevelopment with governmental co-operation. Thus, under a Title I proceeding, the Agency can acquire by purchase or condemnation the properties in the blighted area and clear the site for suitable redevelopment. As an inducement to developers, the Agency may sell that cleared land at a figure substantially below the cost of acquisition, and may condition its grant at the lower price upon the developer's redeveloping the area according to plans approved by the agency and the government, local and national. The Federal Government assumes two-thirds of that loss, and the local government the other one-third. It would contravene the public policy inherent in this social legislation, with its salutary civic purposes, to permit the Agency's *376 grant to the developer, subject to the conditions and restrictions therein, to be rendered abortive by the developer's mortgaging the land, defaulting in the mortgage, and vesting title in a transferee not charged with the developer's covenant of performance. That public policy warrants the conclusion that the restriction in the Agency's deed that the grantee will not "sell, lease, transfer or convey" is not violated merely by a "mortgage," but is violated when the mortgage is followed by a default which gives the mortgagee an absolute right of entry by ejectment, if necessary, and also the right to a foreclosure or sheriff's sale, and transfer of title to the land.
In West Shore R. Co. v. Wenner, supra, the mortgage of the lease was followed by default in the mortgage and actual "sale" of the lease, thus culminating in a violation of the covenant against "transfer" of the lease. In the instant case, the mortgage has also been followed by default, and foreclosure proceedings are presently pending, but there has not yet been any actual "transfer" of title by execution sale. Even the conversion of the mortgage debt into a judgment of record will not transfer title effectually out of the original grantee. Equity requires a sale before he will be completely divested. Accordingly, we hold that as of this time the Agency is definitely not entitled to a reconveyance, unencumbered by plaintiff's mortgage. If plaintiff proceeds with this foreclosure and forces an execution sale and transfer of title thereby, it is our judgment that such a transfer would normally be a violation of a restrictive covenant against a "transfer" or "conveyance." But a mortgage without execution sale would render anticipatory any decision that the mortgage per se was such a breach of this covenant against transfer and would necessitate a reconveyance to Agency, or other legal or equitable relief. The distinction between a restrictive covenant and a condition is considered in Oldfield v. Stoeco Homes, Inc., 26 N.J. 246 (1958); Riverton Country Club v. Thomas, supra; Carpender v. City of New Brunswick, supra. When *377 we add the contract provision expressly excepting the making of a mortgage, the conclusion, a fortiori, is that the mortgage here does not entitle Agency to a reconveyance.

(b) As To Question B.

Paragraph 3.3 of the contract between the Agency and the Developers, required Developers to commence construction of the development within two months after the date of conveyance (here, June 11, 1956) and to complete it within 30 months thereafter (here, February 12, 1959). The deeds, which incorporated the contract obligations, called for completion within 32 months, i.e., by February 12, 1959. Construction on the subject matter has not yet been commenced, so that the developer-grantee has clearly violated the requirements of the contract and the deeds.
Paragraph 4.4 of the contract provides that if the redeveloper failed to perform, and if the holder of the "building loan agreements, and/or first mortgages in replacement thereof shall fail to complete the work within the area covered by its lien," then
"the redeveloper shall reconvey to the Agency, without consideration by bargain and sale deed, all the real property conveyed to the Redeveloper by the Agency with all the improvements thereon, but subject to existing building loan agreements and/or first mortgages in replacement thereof."
and, further, that
"in the event of a default * * * this Agreement shall thereupon terminate in all respects."
There were no building loan agreements and/or first mortgages in replacement thereof. Therefore, if we were considering only the rights of the Agency as against Developers, it seems clear that the latter's non-performance would require a reconveyance to the Agency as plainly provided for in their contract.
*378 Paragraphs 3.2(d) and 4.1(a) provide that in the event of a reconveyance, the grantee Agency must assume all of the redeveloper's obligations, without releasing the redeveloper from his undertakings. Paragraph 4.4 requires written notice by the Agency of any default in construction to the parties in interest. Formal notice of such default was given to plaintiff mortgagee on August 27, 1959 (Ex. 14). Plaintiff has not notified Agency in writing that he would elect to commence and complete construction. Developers lost all rights in the premises by virtue of an execution sale of its rights to Agency on July 22, 1959.
Agency presses upon the court the argument that plaintiff-mortgagee, or any other buyer at the foreclosure sale, cannot acquire any greater rights in this property than the mortgagor had. 37 Am. Jur., Mortgages, § 746. See also Champion v. Hinkle, 45 N.J. Eq. 162 (E. & A. 1888). Hence, it contends that if Developer's and Commercial's flagrant default since the summer of 1956 would entitle it to a reconveyance, plaintiff's mortgage in such a defeasible fee falls with it.
Against this contention, the plaintiff and the third-party defendant argue for a construction of the deeds and underlying contract, which would make non-performance by the developer a mere breach of "covenant," rather than non-fulfillment of a "condition." The distinction between a covenant and a condition is important, in that breach of a covenant will not per se effect a forfeiture of title, whereas breach of a condition will entitle a grantor to a re-vesting of title. Oldfield v. Stoeco Homes, Inc., supra; Carpender v. City of New Brunswick, supra.
As we interpret the language of the contract and deeds, in the light of the public policy involved in municipal redevelopment programs, we are satisfied that Agency's conveyance was on condition that the developer would construct the development within the specified time of 38 months from delivery of the deed. This was more than a mere covenant. The contract recognized the possibility of a default *379 by the developer and gave a right to the holder or holders of "building loan agreements, and/or first mortgages in replacement thereof" to complete the development presumably within the allotted time. It then expressly provided:
"In the event the holder or holders of such building loan agreements, and/or first mortgages in replacement thereof shall fail to complete the work in the Area covered, the Redeveloper shall reconvey to the Agency, without consideration by bargain and sale deed, all the real property conveyed to the Redeveloper by the Agency with all the improvements thereon, but subject to existing building loan agreements and/or first mortgages in replacement thereof." (Emphasis added)
Such language clearly spells out the intention that the conveyance was on condition of performance within the specified time, subject to Agency's right to demand a reconveyance upon default. We find no support for plaintiff's argument that as mortgagee of the undeveloped land he has a right to complete performance beyond the time given by the contract and deeds to his mortgagor.
Agency may, in its liberality, waive the default and may extend the time for performance to the plaintiff-mortgagee, whose mortgage is not a building loan agreement or first mortgage in replacement thereof. But generosity is a voluntary attribute and may not be imposed by this court against Agency's will and in violation of its rights under the contract and deeds. The contract expressly provided that in the event of failure by either party to comply with its provisions
"the other party hereto may institute such actions or proceedings as it may deem advisable as well as proceedings to compel specific performance and the payment of all damages and costs." (Emphasis added)
This broad recital entitled Agency to seek a determination of its rights in the property as set forth in its counterclaim herein.
*380 We cannot direct a reconveyance to Agency subject to plaintiff's mortgage, because the provision in paragraph 4.4, Article IV, General Conditions, specifies that the reconveyance will be "subject to existing building loan agreements and/or first mortgages in replacement thereof." Plaintiff's mortgage is not of that character.
On June 11, 1956 Developers conveyed this "Business Section" to Commercial, with Agency's consent, and on the same day Commercial mortgaged this property to the plaintiff for $250,000, of which some sum like $150,000, as we recall from oral argument, was used to pay Agency the purchase price of this property. The balance of mortgage loan was used for other purposes, such as to pay Agency the purchase price of a separate tract in the residential area. This mortgage contained a provision for future advances but not to exceed $450,000. We understand that $392,000 is presently due on the mortgage, the original loan of $250,000 having been increased by a further advance of $100,000 for purposes not connected with this property, and $42,000 having been added in consideration of an extension of time for payment of the mortgage. In brief, of the $392,000 mortgage indebtedness, only $150,000 of plaintiff's money went into acquiring this property, in the form of Commercial's payment of that amount to Agency as the purchase price.
Paragraph 4.4 of the contract provides that upon a reconveyance to Agency,
"Agency shall resell the Project Area * * *. The proceeds of such sale shall be applied (1) to reimburse the Agency for all costs and expenses incurred by the Agency, including, but not limited, to the salaries of personnel in connection with the recapture and resale, all taxes, assessments, water and sewer charges, and (2) to the total purchase price as set forth herein, less any amounts paid by the Redeveloper under Paragraph 2.1 hereof. Out of any balance remaining, the Redeveloper will be paid an amount not exceeding the cash actually invested by him in acquiring the Project Area and performing the construction in such Area that is required herein, less his deposit as set forth in Paragraph 2.2(a) hereof. Any balance remaining shall remain the property of the Agency." (Emphasis added) *381 To the extent, therefore, of the amount actually invested by the Redeveloper in acquiring the Project Area, the plaintiff, as unpaid mortgagee of the Redeveloper, is entitled to an equitable lien against the subject property.
An order in conformity with this opinion may be presented to the court.