### UNITED STATES
### v.
### Morris C. GOLDBERG, etc., et al.
### Civ. A. No. 35830.

United States District Court
E. D. Pennsylvania.

Sept. 14, 1965.

---

* Compare Lowry & Co. v. S.S. Nadir, 223 F.Supp. 871, 873–874 (S.D.N.Y.1963).

252

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., John J. Gobel, Dept. of Justice, Washington, D. C., Donald J. Gavin, Dept. of Justice, Washington, D. C., Sidney Salkin, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Edwin P. Rome, Philadelphia, Pa., for receivers.

Harry A. Rutenberg, Philadelphia, Pa., for petitioner, Rose Satkoff.

CLARY, Chief Judge.

The facts of this case have been stipulated to, and approved by the Court. The problem involved arises out of a claim of Rose Satkoff, assignee of a 25% interest in a mortgage created on or about September of 1959 by LaMar-Gate, Inc., a New Jersey corporation. The corporation executed and delivered said mortgage to Arlin M. Adams as Trustee for Pennsylvania Laundry Company, in the sum of $65,000, secured upon certain real property located at Weymouth Avenue, Ventnor City, Atlantic County, New Jersey, and known as the "Monaco Motel" and owned by the aforesaid LaMar-Gate, Inc. The assignment provided that this share was to be paid out of the proceeds of the mortgage as and when paid, with proportionate reduction of her interest should the mortgage not be paid off in full.

By Order of this Court dated September 8, 1964, the Receivers were authorized to accept the sum of $30,000 in full payment for an assignment to Nicholas A. Caruso of the said mortgage. The said Order further provided that the Receivers were to pay Rose Satkoff her proportionate interest in the said sum of $30,000 with adequate proof thereof by her.

The Government, on July 12, 1962, made an assessment of $355,987.27 against the Pennsylvania Laundry Company for income taxes due for the years 1954–57 inclusive. On the same date, notice of tax liens based on the assessment was filed in the office of the Prothonotary of Philadelphia County, Pennsylvania. On May 12, 1964, notice of the tax liens covering the same assessment was filed in the County Seat, Mays Landing, Atlantic County, New Jersey, where the mortgage had been recorded in 1959.

The Stipulation of Facts, at paragraph 5 thereof, states that the interest of Rose Satkoff in the funds resulting from the sale of the mortgage is based upon a document prepared by Barry B. Wohl-

man, Esquire, as counsel for both Pennsylvania Laundry Company and for Rose Satkoff, which was executed in Philadelphia. The instrument was thereafter retained by Barry B. Wohlman, Esquire, and since there is no mention of the fact, and all of the facts have been stipuated, the Court must find that the partial assignment of the mortgage was never recorded at the County Seat, Mays Landing, Atlantic County, New Jersey.

Counsel for the petitioner, at the hearing, readily agreed that with the filing of the lien in Atlantic County, the Government became a judgment creditor. There has been no averment that the Government at the time of the filing of the lien had any notice whatever of the existence of this assignment.

As the parties have framed the issues, the threshold question for decision is whether or not the mortgage in question is personalty. The position of the Government and the Receivers is that a mortgage is personalty and the mortgagee acquires no interest in the realty being mortgaged. If this were true, under the facts in this case, the Government's tax lien on the mortgage would have been perfected on the date the notice was filed at the taxpayer's domicile, July 12, 1962, and would relieve it from filing any notice whatsoever as the situs of the mortgaged property.

The Government and the Receivers have cited an impressive array of authorities holding that a mortgage is personalty for some purposes. But the Court cannot subscribe to the view that the mortgagee acquired no interest whatsoever in the mortgaged premises. The Court recognizes that answering the realty or personalty question frequently depends upon whether the action is at law or in equity, the legal relationship of the litigating parties, and whether the issue is cast in the law of trusts, conflict of laws or real estate. Different combinations of these factors may cause different results from jurisdiction to jurisdiction. It is not our function in this case to harmonize these views and to answer the ultimate question, but only to decide whether under the law of New Jersey, the mortgagee acquires such an interest in the realty so as to draw it within the range of the Recording Acts.

■ The Court is well satisfied that New Jersey recognizes such an interest in the mortgagee, and the case of Feldman v. Urban Commercial, Inc., 64 N.J. Super. 364, 165 A.2d 854 (1960) is just a sampling of the authority in support of this proposition.

"We recognize that, in form and under common law interpretation, a mortgage, in New Jersey, has been held to be in the nature of a 'transfer or conveyance' of the *legal* title from the mortgagor to the mortgagee, subject to a re-vesting of title in the mortgagor upon payment of the mortgage. * * * " Feldman v. Urban Commercial, Inc., supra, 165 A.2d at 860, and the numerous cases cited therein, and see also Puritan Dairy Products Co. v. Christoffers, 54 N.J.Super. 102, 148 A.2d 223 (1959).

■ It is clear from the foregoing that the mortgagee's interest sufficiently affects the realty so that his interest and the interest of anyone who seeks to encumber it must comply with the local recording statutes regulating the transfer and perfection of interests in real property.

■ The New Jersey recording statutes could not be clearer or more in point as they apply to the transaction in this case. Two sections of the recording acts are pertinent. Section 46:19–1 delineates a noninclusive list of instruments that are required to be recorded. After listing deeds, ancient deeds, releases and mortgages, subsection (e) reads as follows: " 'Assignment of Mortgages'—for all assignments of mortgages, whether absolute or by way of mortgage or security * * *." Clearly the instrument in question, Mrs. Satkoff's partial assignment, is covered by this subsection. It is just as clear under these facts that she did not and has not yet complied with this section.

The effect of the failure to record any of the instruments specified, including assignments of mortgage, is described in section 46:22–1, which reads as follows:

"Every deed or instrument of the nature or description set forth in section 46:16–1 of this title [the section referred to above enumerating the instruments to be recorded] shall, until duly recorded or lodged for record in the office of the county recording officer in which the affected real estate or other property is situate, be *void and of no effect against subsequent judgment creditors without notice,* * * * but any such deed or instrument shall be valid and operative, although not recorded, except as against such subsequent judgment creditors, purchasers and mortgagees." (Emphasis added.)

Reading the two sections together, it is evident that the failure to record an assignment of mortgage as was done here makes it void as against a subsequent judgment creditor without notice. When the Government perfected its lien by filing in Atlantic County on May 12, 1964, it became a judgment creditor without notice subsequent to the partial assignment. There could be few clearer statutory commands.

The petitioner urges upon the Court the applicability of the case of Rose v. Rein, 116 N.J.Eq. 70, 172 A. 510 (1934). The difficulty with this case is more apparent than real as is evident from the following language in the case:

"This court has held that section 54 of the Conveyance Act, 2 Comp. St.1910, pp. 1532, 1553, § 54, which provides that certain unrecorded instruments shall be void as against subsequent judgment creditors, is not applicable to assignments of mortgage. * * * *The part of the 1931 act, referred to, does not include assignments of mortgage.* The appellant also relies on that part of the 'Act Concerning Mortgages,'

which refers to assignments of mortgages, 3 Comp.St.1910, p. 3418, § 31 et seq., *but an examination of this statute shows that it is silent as to subsequent judgment creditors,* and in the case of unrecorded assignments, only protects persons who deal with the assignor as if he were still the holder of the mortgage, by making payment for the release of said mortgaged premises, or any part thereof." (Emphasis added.) Rose v. Rein, supra, 172 A. at 512.

The Court's research has not been able to disclose just what act is construed in that case, but it is quite clear that it does not refer to the above-quoted portions of the Recording Acts. Otherwise the New Jersey Court could not have so authoritatively stated that: "The part of the 1931 act, referred to, does not include assignments of mortgage," as section 46:16–1(e) does so directly, nor could it say that the act is "silent as to subsequent judgment creditors" when section 46:16–1 makes it so unquestionably clear that unrecorded assignments of mortgage are void as to subsequent jumping creditors. While it sheds no light on the statutory problem herein, it is interesting to note that the case of Rose v. Rein was an equity matter (whereas this proceeding is at law) and the assignee was not treated as the owner of the mortgage. The mortgagee was treated as the owner, subject only to the assignee's lien for the loan.

The final point raised by the petitioner is that once the Court determines that the instrument is valid as between the parties thereto, whether or not there has been compliance with the recording statute, is immaterial. This theory the Court cannot accept in the face of a multitude of federal cases calling for the perfection of this type interest to defeat federal liens, and the New Jersey statute voiding assignments of mortgage which are not perfected by recording.

The Court finds that the Government, by filing its notice in Atlantic County on May 12, 1964, fully perfected its tax lien which cannot be defeated by the

unrecorded partial assignment of mortgage held by the petitioner.

### ORDER

And now, to wit, this 14th day of September, 1965, upon consideration of the Petition of Rose Satkoff for an Order upon Receivers directing payment to her of her proportionate share of mortgage indebtedness (Docket Paper #70), Stipulation of Facts (Docket Paper #130), briefs submitted, hearing held and argument had thereon, and for the reasons set forth in the foregoing Opinion, it is ordered, adjudged and decreed that the said Petition be and it is hereby denied.