FIRST BAPTIST CHURCH OF FORT WORTH V. BIBLE BAPTIST SEMINARY ET AL

No. A-8158. Decided May 3, 1961
Rehearing overruled July 19, 1961
(347 S. W. 2d Series 587)

*Brewster, Pannell, Leeton & Dean,* of Fort Worth, for petitioner.

*H. Joe Loe, Fannin & Fannin,* of Fort Worth, for respondents.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

The First Baptist Church of Fort Worth brought this suit against the Seminary and others. The question is which of the two has title to a tract of land known as the Sweet Dormitory tract. The Seminary, by ordinary warranty deed, conveyed the

property to the Church. The Seminary contends that a resolution of its directors shows as a matter of law that the deed was not intended to convey title to the property but was in the nature of a mortgage to secure an indebtedness. The trial court instructed the jury to return a verdict for the Church. That judgment was reversed and the cause was remanded by the Court of Civil Appeals for a new trial on the ground, as we understand it, that an issue of fact existed as to whether the deed was intended to be a mortgage or an instrument in the nature of a mortgage given to secure a debt. 339 S.W. 2d 710. We here reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

The suit, instituted by the Church, was in the statutory form of trespass to try title. The Seminary and others (herein referred to as the Seminary) filed only a plea of not guilty. Two other defendants, the Continental National Bank of Fort Worth and an insurance company, filed disclaimers.

Except for stipulations of the parties, all of the evidence which was introduced was documentary and was introduced by the Church. The Seminary introduced no evidence, and no witnesses took the stand. When the Church had finished introducing its documents, it rested. The Seminary thereupon announced that it also rested. Both made motions for instructed verdict, and that of the Church was granted. The reasons assigned in the motions will be set out later herein.

The land, and the only land, here in question is the South half of Lot No. 1 in Block 76 of the original town of Fort Worth. The tract is also called the Sweet Dormitory tract.

The proof which was introduced by the Church was as follows:

In 1941, the Church deeded the south half of Lot 1, Block 76, the Sweet Dormitory tract, to Miss Jane Hartwell. Miss Hartwell appears otherwise in the record as clerk or secretary of the Church and of its Board of Trustees. The consideration recited is $10. The Church owned other property nearby in downtown Fort Worth which is described as the south half of Lot 1 and all of Lots 2, 3, and 4, in Block 75.

In May, 1945, Jane Hartwell, for a recited consideration of $15,000, deeded the Sweet Dormitory tract to the Seminary.

It was stipulated that Jane Hartwell held fee simple title to the south half of Lot 1, Block 76, the Sweet Dormitory tract, in May of 1945 when she deeded it to the Seminary. It was also stipulated that the Church has fee simple title to the other property (the south half of Lot 1 and Lots 2, 3, and 4 in Block 75) subject to the claim of the Seminary that it has a 199-year lease on the Church's land in Block 75. The 199-year lease is not involved here.

On July 20, 1947, the Board of Directors of the Seminary met and passed a resolution substantially as follows: whereas the Church has, from the beginning, sponsored the work of the Seminary and has contributed to it, "and said [Seminary] corporation is in reality a part of the activities and work of said church"; and whereas the Seminary is obligated in the amount of $150,000 for the completion of a building on the south half of Lot 1, Block 76, and is unable to finance the completion of the building, and the Church has agreed to assume the indebtedness and pay it off if the corporation will convey the property to the church; therefore "be it resolved that the President of this corporation, J. Frank Norris, do hereby convey said property of this [Seminary] corporation to the said church in consideration of the assumption and payment by said church of said indebtedness against said property." [J. Frank Norris appears as President of the Seminary Corporation and also as pastor of the Church.]

On July 24, 1947, the Seminary conveyed the Sweet Dormitory tract to the Church for a recited consideration of $10 and the assumption of the indebtedness. The Church, in a congregational meeting and by resolution of its board, accepted the deed and the assumption of the indebtedness. This resolution also recited that the Seminary had been sponsored by the Church, that the Seminary owed $150,000 for construction on the tract for which the Seminary could not pay, and that the Church was willing to accept a deed to the property and assume the payment of the debt. The resolution was attested by Jane Hartwell, Secretary of the Church.

Also on July 24, 1947, the Church in a congregational meeting, and the Board of the Church by resolution, authorized J. Frank Norris, its pastor, to borrow from the Continental National Bank of Fort Worth the sum of $250,000 "for the purpose of paying off the existing indebtedness on the church property and to pay off the indebtedness against the property acquired

from Bible Baptist Seminary * * *" The loan was to be secured by a deed of trust from the Church on the Sweet Dormitory tract (the south half of Lot 1, Block 76) and also on the south half of Lot 1 and all of Lots 2, 3, and 4, in Block 75 in Fort Worth. On July 30, 1947, the Church executed its note for $242,000 to the Bank and executed a deed of trust on *all* the property mentioned above. The note and lien was assigned by the bank to an insurance company in 1948. In that transaction, the Church executed a new note to the insurance company for $250,000; and the Church warranted that it was the owner of all the property. The Seminary was not obligated in any way in the note or mentioned in the deed of trust. At this time, the insurance company also took a chattel mortgage on Church property to secure the note.

In 1949, the Church borrowed from the insurance company an additional $27,168.33 which it combined with its old note to make a new balance of $266,000. Again all of the property above mentioned was mortgaged by the Church, and a new deed of trust and chattel mortgage were executed by it.

On May 11, 1949, the Church conveyed the Sweet Dormitory tract back to the Seminary. The consideration recited was $10 and other good and valuable consideration. The Seminary did not assume the indebtedness on the property, but took it "subject to any existing indebtedness against the same." No resolution supports the granting or acceptance of this conveyance.

Thereafter the Seminary deeded the Sweet Dormitory property back to the Church. This deed and the resolution of the Seminary supporting it are the crux of this lawsuit. The substance of the resolution of the Board of the Seminary, dated August 2, 1950, reads:

"Whereas, the Seminary is desirous of obtaining additional dormitory space to house and take care of students who are attending the seminary, and the seminary has a lease from The First Baptist Church of Fort Worth of a portion of the Church property situated on Blk. 75, of the City of Fort Worth, and it is planned to add a floor to a portion of said building on 4th and Throckmorton streets, and to make certain changes in other portions of the building so that the said added floor and the other portions of such building may be divided into dormitory rooms to house students attending the Seminary and it is necessary to borrow

$60,000.00 for the purpose of making such changes and improvements and that the Seminary is unable to borrow such sum and amount without the aid of the First Baptist Church of Fort Worth and in order to secure such loan, it is necessary that the Seminary join with the Church in making said loan by deeding to the Church the dormitory building being a part of Block 76 of the City of Fort Worth, South ½ of Lot One (1), Block 76 (76), of the original town of Fort Worth, in Tarrant County, Texas, and the dormitory building situated on West Second Street [known as the Neely Apartments, which are not involved in this lawsuit] * * * [here follows a description of the Neely tract, omitted here] so that the Church may add such property to the property of the Church in making a loan sufficient to furnish said $60,000.00 to make said improvements.

"NOW THEREFORE BE IT RESOLVED that the Bible Baptist Seminary acting through its trustees is authorized and directed to deed to the First Baptist Church of Fort Worth the said dormitory building located in Block 76 and the said dormitory building located on West Second Street so that the Church may use said property together with the church property in making said loan and providing said funds to be used in said construction work."

It is noted that the $60,000 addition was to be on property of the Church in Block 75 on which the dormitory claims a 199-year lease and not on the building on the Sweet Dormitory tract.

Almost six months later, on January 30, 1951, the Seminary executed a general warranty deed of the Sweet Dormitory tract to the Church. The deed is brief and in ordinary form. The consideration recited is "$10 and other good and valuable consideration." The deed does not refer to a resolution, an indebtedness, a mortgage, or anything else. It is just a plain general warranty deed.

On May 16, 1951, the board of the Church authorized J. Frank Norris to borrow $54,353.44 which was combined with the balance on the Church's old note, making a new balance of $250,000. Accordingly on that date, the Church executed its note for $250,000 to the insurance company. The note recited that it was to renew the old note and for additional advances. The Church executed a new chattel mortgage and a new deed of

trust on its property in Block 75 and on the Sweet Dormitory tract. The Church warranted that it was the fee simple owner of all the property. The Seminary was not obligated in the note and is not mentioned in the deed of trust.

After the introduction of these instruments, the parties rested.

The Church filed a motion for instructed verdict because "the only evidence offered in this case consists of written instruments which are part of the chain of title to The First Baptist Church beginning with Jane Hartwell, the admitted common source," and there is no issue of fact. This was granted.

The Seminary filed a motion for instructed verdict based on these grounds:

1. The conveyance of the Sweet Dormitory tract to the Church on January 30, 1951, was "for the sole purpose to enable the Church to use such property as security for a loan" and therefore the title did not pass to the Church.

2. The undisputed evidence of the above is the resolution of the Directors of the Seminary dated August 28, 1950. The motion of the Seminary was refused. Judgment was for the Church based on the instructed verdict.

In the Court of Civil Appeals, the Seminary, as appellant, had only two points. They both had the same preamble. In substance, they were: since the conveyance from the Seminary to the Church was given, under the undisputed evidence, for the purpose of securing the payment of a debt, the trial court erred: (1) in rendering judgment for the Church, and (2) in failing to render judgment in favor of the Seminary that the Church take nothing.

■■ Under the record made in the trial court, we think that court correctly instructed a verdict for the Church.

For an instrument to be a mortgage, title does not pass from the grantor to the grantee. The grantee gets only a lien. Under the Texas law, if the title passes, the instrument is not a mortgage. *Humble Oil and Refining Co. v. Atwood* (1952), 150 Tex. 617, 244 S.W. 2d 637. We think that as a matter of law, under the record before us, it was the intention of the parties

that title to the Sweet Dormitory tract pass to the Church. This assumes that the resolution of August 2, 1950, is binding upon the Church and is to be read in connection with the deed.

■ We think that the wording in the resolution explained why the deed was being executed. Words in a deed showing the purpose of the grant and the use to which the property is to be put do not change the effect of the conveyance or limit the grant. *Texas Electric Co. v. Neale* (1952), 151 Tex. 526, 252 S.W. 2d 451.

As we understand the record, the evidence showed that the Seminary owned or claimed a 199-year lease on the Church's property; that it wanted dormitory space added on one of the Church's buildings, on which it had the long-term lease, to be used in connection with the Seminary; that it was willing to convey its heavily encumbered property to the Church to get the Church to borrow the money which the Seminary could not borrow in order to make the improvements on the leased pro-' perty. The Seminary had owed $150,000 on its tract which it had been unable to pay, and the Church had taken the property and assumed all the debt in 1947. The Church borrowed the money to pay the debt. Then the Church had reconveyed the dormitory tract to the Seminary. But the Seminary did not assume the debt; it took the property subject to the indebtedness. When again the Seminary desired improvements, it was willing for the Church to have the property and the debt. So it reconveyed the property. We think, at least, it must have intended for the title to the property to pass to the Church so that the Church, with the full title, could borrow money on it. It did so.

■ Moreover, for an instrument to be a mortgage, there must be a debt. *McMurry v. Mercer*, 73 S.W. 2d 1087 (writ refused, 1934). There is no evidence that the Seminary is obligated to anyone as a result of the particular transaction in question. The lender bank looked squarely to the Church which warranted that it owned the property in fee simple. Ordinarily a mortgage is from the borrower to the lender. This Court has held, however, that it is permissible to show that the mortgagor is using his property as surety for the debt of another; i.e., to secure the debt of a third person. The Seminary relies heavily on such cases: *Wilbanks v. Wilbanks* (1960), 160 Tex. 317, 330 S.W. 2d 607, and *Austin v. Austin* (1944), 143 Tex. 29, 182 S.W. 2d 355. We regard these cases as distinguishable. In *Wilbanks*, a brother got in trouble and needed money. The father called on

a second son for financial help. The second son put up the money and got a deed from his father to property worth many times more than the debt owed by the first brother and which the second son paid. There was a good deal of evidence, written and oral, that the father gave the second son a deed to secure the loan made by the second son to the first brother. It was held that an issue of fact was raised as to whether the father's deed was a mortgage. It was a suretyship arrangement.

Similarly, in the *Austin* case, the father was indebted to J. S. Shivers. Shivers demanded payment and suggested that the father "deed" his homestead to a son in return for the son's promissory note which could be assigned to and held by Shivers as security. This was done, and the father and his wife ultimately paid the debt to Shivers who returned the notes. There was a good deal of other evidence that the son did not claim the land as his own and that the parents did. After the death of the parents, in a suit among the children for partition, the son claimed the land as his own under the deed. It was held that a fact issue was raised that the deed from the father to the son was a mortgage. But it was to secure a debt which the father owed Shivers. In none of these cases has the conveyance been to the *borrower*.

The Seminary also relies upon *Bell v. Ramirez*, 299 S.W. 655 (writ refused, 1927). There, Ramirez ran afoul of the liquor laws and employed Bell as attorney to represent him. Bell said his fee would be $3,000. Ramirez and wife, uneducated people, signed an instrument represented to them to be a mortgage to secure the payment of the fee but which was a deed to their homestead. Bell promptly thereafter borrowed money on the place and represented in the loan application that the property was worth $16,750. It was worth a good deal more than $3,000. There were other circumstances not reflecting credit on Bell. It was held that the burden was on Bell, as an attorney, to prove that there was no fraud and that he had dealt fairly with the Ramirezes, and that a fact issue was raised as to whether the deed was intended to be a mortgage. Again, there was a debt owed from Ramirez to Bell to support a mortgage.

As has been indicated, we think the title to the property did pass to the Church. Neither the deed nor the resolution contained any promise, express or implied, to reconvey the property. The Seminary had no pleadings invoking the court's equitable powers. This Court has held that a litigant could not

try issues involving an equitable right (as distinguished from an equitable title) under the statutory trespass to try title pleading. *Ayers v. Duprey,* 27 Tex. 593, 594 at 604; *Moore v. Snowball,* 98 Tex. 16, 81 S.W. 5, 66 L.R.A. 745; 41-A Tex. Jur. 630, Trespass to Try Title § 103. In the first suit mentioned in *Moore v. Snowball,* the usual allegations by a plaintiff in trespass to try title and a plea of not guilty by the defendant were involved. That is the case here. See also *Wheeler v. Haralson,* 128 Texas 429, 99 S.W. 2d 885 (Tex. Com. App. 1937).

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.