**In re ALABAMA FUEL SALES CO., INC., Debtor.**

**ALABAMA FUEL SALES CO., INC., Plaintiff,**

**v.**

**NEWPARK RESOURCES, INC., et al., Defendants.**

**Civ. A. No. 84–Y–2980–S.**

United States District Court, N.D. Alabama, S.D.

Jan. 7, 1985.

Jerry W. Schoel, Denaburg, Schoel, Meyerson, Ogle, Zarzaur & Max, Birmingham, Ala., for plaintiff.

William B. Hairston, Jr., Engel, Hairston, Moses & Johanson, P.A., Birmingham, Ala., for Newpark Resources, Inc. and ELPAC, Inc.

Lawrence D. Vinson, Jr., Bradley, Arant, Rose & White, Birmingham, Ala., for SouthTrust Bank of Alabama.

## MEMORANDUM OPINION

ACKER, District Judge.

The effect of this court's order of December 21, 1984, which withdrew particular matters from the bankruptcy court, was to permit Alabama Fuel Sales Co., Inc., the debtor, to elect between two possible remedies: (1) filing an adversary proceeding, and (2) filing a motion seeking confirmation of a private sale of an asset of the debtor. The order also had the necessary effect of setting aside the orders which had previously been entered in the premises by the bankruptcy court. On December 26, 1984, Alabama Fuel made its election between remedies by filing a motion to dismiss its adversary proceeding against Newpark Resources, Inc. and Elpac, Inc., and by filing a motion for this court's approval of a private sale or assignment to Pyramid Mining Company, Inc. of Alabama Fuel's interest in a certain coal loading facility in Ohio County, Kentucky. Alabama Fuel's motion to dismiss its adversary proceeding is due to be granted without prejudice. On December 28, 1984, SouthTrust Bank of Alabama, N.A., filed a conditional objection to Alabama Fuel's proposed private sale, saying that it objects unless the court simultaneously orders that the proceeds of such a sale be applied first to Alabama Fuel's obligation to SouthTrust. On December 31, 1984, Newpark and Elpac filed a motion to dismiss Alabama Fuel's petition for approval of its proposed private sale, challenging this court's subject matter jurisdiction and its *in personam* jurisdiction.

The facts which bear on the jurisdictional issues are without dispute. They have been briefed by both parties, and the court heard oral argument on December 31, 1984, as to its jurisdiction. The facts pertinent to jurisdiction are these:

1. Prior to November 3, 1981, the date upon which Alabama Fuel filed its petition under Chapter 11 of the Bankruptcy Code, Alabama Fuel had an interest in the coal loading facility in Kentucky which is the subject matter of this proceeding. The parties disagree as to the proper label to be placed on Alabama Fuel's said interest, but the court deems the labeling relatively unimportant. The fact is that the "interest" does exist and was created by a contract. This "interest" constitutes "property" of the debtor within the meaning of "property" as that word is used in 28 U.S.C. § 1334(d).

2. On February 8, 1982, the bankruptcy court confirmed Alabama Fuel's plan of reorganization. This confirmation bound all of Alabama Fuel's creditors as well as Alabama Fuel unless and until the plan should be modified. The plan has not been modified. *Inter alia*, the plan contains the following provisions:

### ARTICLE III

### EXECUTION AND IMPLEMENTATION OF THE PLAN

\* \* \* \* \* \*

(5) Upon confirmation, the Debtor shall be *revested with its assets, subject*

*only to outstanding liens which are not avoidable by the Debtor* under the provisions of Title 11 of the United States Code and *Debtor shall be entitled to manage its affairs without any further order of this Court and without restriction on its activities* except with regard to stipulations placed upon it by the provisions of this plan. (emphasis supplied).

\* \* \* \* \* \*

## ARTICLE VI

### JURISDICTION OF COURT

*Subject to Article II* [this is a typographical error which Alabama Fuel admits in its brief, and should read "Article III"], Paragraph 5, the Court will retain jurisdiction until this plan has been fully consummated, including, but not limited to the following purposes:

\* \* \* \* \* \*

2. Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtor and any other party, including but not limited to, any right of the Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code. (emphasis supplied).

The clear intent of these provisions of the decree was fully to revest Alabama Fuel with title to its property and to allow Alabama Fuel to deal with it in relation to third parties without any restraint whatsoever including any requirement that Alabama Fuel obtain the approval of the bankruptcy court. In effect, Alabama Fuel was kicked out of the bankruptcy nest to try its wings like any other enterprise in the business world, subject only to its entrepreneurs' obligation to follow the plan.

3. On January 5, 1976, prior to bankruptcy, Alabama Fuel had entered into a written agreement with Elpac's predecessor corporation. That agreement dealt with the rights and responsibilities of the respective parties as to a then prospective coal loading facility to be constructed, which was subsequently constructed, and which now is the subject of this proceeding. *Inter alia*, that agreement provided in paragraph 10:

(10) This Agreement shall inure to the benefit of the parties hereto, and their heirs, executors, administrators or assigns; however, *neither party shall sell, convey, transfer, or assign any of its rights or benefits hereunder without first securing the other party's written approval thereto.* (emphasis supplied).

4. The said agreement of January 5, 1976, between Alabama Fuel and Elpac's predecessor was subsequently amended, but the critical language of paragraph 10 has never been eliminated or amended. The last amendment was executed by and between Alabama Fuel and Elpac on April 4, 1983, *after the confirmation order entered by the bankruptcy court and without any approval by the bankruptcy court.* It therefore appears that for a good and valuable consideration, including a written guaranty by Newpark (which had not previously been a party to the agreement) of Elpac's obligations, this last amendment to the contract provided that Elpac could sublease the subject coal loading facility to Lewis Creek Docks.

5. Pursuant to the agreement of April 4, 1983, Elpac, did, in fact, enter into a sublease agreement with Lewis Creek Docks, which presently occupies and operates the coal leasing facility. Lewis Creek Docks has not been made a party to this proceeding.

6. Neither Elpac nor Newpark has any connection with the State of Alabama except that Alabama Fuel, the party with which Elpac and Newpark contracted on April 4, 1983, is incorporated in Alabama, and has its principal place of business here. None of the contracts or amendments thereto here involved were executed in Alabama, and the real property here involved is located in Kentucky.

7. A final order has never been entered in Alabama Fuel's Chapter 11 proceeding.

8. Elpac and Newpark have failed and refused to give their written consent to Alabama Fuel's proposed sale or assignment of Alabama Fuel's interest in the coal facility to Pyramid.

## CONCLUSIONS

■ Alabama Fuel argues that 28 U.S.C. § 1334 gives this court jurisdiction over all the property of the debtor so long as its Chapter 11 case is pending. Newpark and Elpac argue that once the order confirming the plan was entered, the debtor was no longer a debtor-in-possession and the bankruptcy court's reservation of jurisdiction was so limited that 28 U.S.C. § 1334 does not give this court jurisdiction over the particular interest here involved. The court agrees with Alabama Fuel and disagrees with Newpark and Elpac over the breadth of the intent of 28 U.S.C. § 1334(b) and (d). The court believes that the statutory language was intended to provide jurisdiction in the district court (as in the bankruptcy court), including jurisdiction over property rights such as those in this case, even after the confirmation of the plan under Chapter 11, so long as the case is still technically pending. Assuming basic jurisdiction, Alabama Fuel next argues that 11 U.S.C. § 365(f) gives the court jurisdiction to approve a sale or assignment of any property interest which Alabama Fuel owns, including its interest in the Kentucky coal facility. By seeking such approval Alabama Fuel, in effect, asks this court to abrogate Elpac's contract right to withhold its consent to any sale or assignment to Pyramid by finding that the sale is not only a "good deal" for Alabama Fuel, but a "good deal" for Elpac, and thus for its guarantor, Newpark.

■ The court finds several problems with exercising jurisdiction over this controversy.

First, Lewis Creek Docks, which ostensibly became Elpac's sublessee with the knowledge of the existence and terms of a solemn contract which gave Elpac veto power over any assignment of Alabama Fuel's interest, appears to be an indispensable party. Lewis Creek Docks has rights which theoretically and practically will be affected by any order which purports to alter or to take away Elpac's veto power over a substitute of Pyramid for Elpac.

Second, even if the court were willing to proceed to a purported adjudication without an indispensable party, the court recognizes the difficulty of deciding the merits of whether or not Elpac is wise or foolish in refusing to give its consent to the proposed sale. Substituting this court's business judgment for that of a business enterprise with the absolute contractual right to exercise its own judgment, even if it proves to be wrong, is not a judgment which this court covets.

Third, on February 8, 1982, Alabama Fuel lost its status as debtor-in-possession. On that date it was fully revested with all of its property interests, including its interest in this coal facility. While the bankruptcy court intended to retain jurisdiction for certain limited purposes, it clearly intended to relinquish jurisdiction and control over the property interest here involved. The proof of this intent is not only found in the language of the decree of confirmation itself, but in the fact that after the confirmation Alabama Fuel dealt with its interest in this coal facility in its relation with Elpac and to Newpark without any bankruptcy court involvement whatsoever. Although 28 U.S.C. § 1334 may technically give this court jurisdiction despite the clear contrary intent of the order of February 8, 1982, the court deems Alabama Fuel probably estopped to invoke this court's jurisdiction for the purpose of obtaining approval of a sale to Pyramid over the objection of Elpac, when Alabama Fuel dealt at arms length with both Elpac and Newpark after the confirmation of the plan. For aught appearing, neither Elpac nor Newpark would have executed the agreement of April 4, 1983, had either had any doubt about Alabama Fuel's absolute right to execute the contract binding on it in every particular, including the non-assignability clause. El-

pac and Newpark had a right under the circumstances to expect Alabama Fuel to be consistent, and not two years later to suddenly run to the bankruptcy court to seek a material change in the contract which the parties had bargained for in good faith and for a valuable consideration. Furthermore, 6A *Collier on Bankruptcy*, § 11.13 indicates that the standard reservation of jurisdiction is for the purpose of assuring implementation of the plan and not for altering the terms of post-confirmation agreements.

Fourth, the law of Kentucky controls the contract by and between Alabama Fuel, Elpac and Newpark, a fact which makes a Kentucky court a more appropriate forum for resolving any controversy over its interpretation or enforceability. For instance, the law of Kentucky may be entirely different from the law of Alabama on the subject announced by a divided Supreme Court in *Homa-Goff Interiors v. Cowden*, 350 So.2d 1035 (Ala.1977), where that court found that a lessor may not unreasonably and capriciously withhold its consent to a sublease agreement despite a clause in the lease making such a sublease subject to lessor's written consent. This court doesn't feel particularly well qualified to act on a matter of Kentucky law.

Fifth, 11 U.S.C. § 365(f) may have been designed to provide a method for approving the terms of a sale of a debtor's property, but it was not designed to permit the wresting from a third party of its post-confirmation property rights without compensation in order that the debtor's property can be delivered to a purchaser "free and clear". To wipe out Elpac's rights would implicate the Fifth Amendment's prohibition against the taking of private property without paying just compensation. The philosophy behind Chapter 11 permits an adverse effect on the rights only of *consenting* third parties. Here Newpark came on the scene only after the plan was confirmed. Newpark cannot be classified as a "creditor", much less as a consenting creditor. Even if by implication Alabama Fuel is here tendering a release of Newpark as guarantor of Elpac's obligations under the

agreement as last amended (something which the court cannot conclude by implication alone), the court doubts that § 365(f) gives it a green light here.

Sixth, the plan itself nowhere contemplates the sale of this particular Alabama Fuel asset. Alabama Fuel's creditors agreed to the plan without any expectation whatsoever that a sale of Alabama Fuel's interest in this coal loading facility would be a part of the rehabilitation or would provide a source for paying creditors' claims. This fact tends to indicate that the proposed sale may be more of a bonanza for Alabama Fuel's stockholders than for its creditors, that is, unless the plan is modified and a larger distribution is made to creditors. There is no pending motion for such a modification.

Seventh and lastly, Chapter 11 nowhere mandates a time limit for the entry of a final decree. It simply requires a decree "on consummation of the plan", an event which may occur. To permit for an indeterminate time period judicial intervention in favor of a debtor into a contractual relationship between the debtor when no longer debtor-in-possession and a third party would go beyond the concept of bankruptcy as contemplated in the constitution.

Under these circumstances, even though the court might rationally assert jurisdiction, the court concludes that it should abstain from any exercise of jurisdiction and should leave the parties to proceed routinely in a forum where they could have proceeded if the bankruptcy case had never existed. Therefore, pursuant to 28 U.S.C. § 1334(c)(1) the court expressly finds that abstention here is called for in the interest of justice, in the interest of comity with state courts and in respect to state law.

It may be ironic that this order came as the result of Alabama Fuel's and/or Pyramid's perceived necessity that the district court place its imprimatur on the bankruptcy court's order which purportedly approved Alabama Fuel's proposed sale to Pyramid. If it will help their feelings, the court will speculate that even if Alabama

Fuel had not sought what it felt was routine district court approval of the bankruptcy court's order (which, if it was entered in a "core proceeding" needed no district court imprimatur), Elpac and Newpark would have filed a timely appeal.

An appropriate separate order will be entered.