**FARM CREDIT BANK OF TEXAS, f/k/a The Federal Intermediate Credit Bank, Successor in Interest to the Sweetwater Production Credit Association, Appellant,**

v.

**SNYDER NATIONAL BANK, Appellee.**

No. 11–89–238–CV.

Court of Appeals of Texas, Eastland.

Sept. 20, 1990.

Rehearing Overruled Jan. 17, 1991.

Dan G. Young, McCleskey, Harriger, Brazill & Graf, Lubbock, for appellant.

Teena Tatom, Thomas Choate, Glandon, Erwin, Scarborough, Baker & Choate, Robert L. Jones, Crenshaw, Dupree & Milam, Michael Puryear, Carr, Evans, Fouts & Hunt, Lubbock, for appellee.

## OPINION

ARNOT, Justice.

Farm Credit Bank of Texas (Farm Credit) appeals a summary judgment which held that the lien of Snyder National Bank (Snyder) was superior to the interest of Farm Credit in the debtors' property. Farm Credit also appeals the trial court's ruling that it did not have standing to challenge the attorney's fees awarded to Snyder's counsel. We affirm in part, and we reverse and remand in part.

Parks–Walker Cattle Company, Inc. and Parks–Walker Land & Livestock Company, the debtors, filed for protection under the Bankruptcy Act, Title 11 of the United States Code. The debtors had two main assets: an oil and gas producing property, known as the "Silver Ranch," and a subdivision of the City of Snyder, known as the "Round Top Acres." The debtors had two main creditors: Sweetwater Production Credit Association (Sweetwater Production), Farm Credit's predecessor in interest, which held a pre-petition security interest in the "Silver Ranch" and Snyder which

held a post-petition security interest in "Round Top Acres."

On March 21, 1984, the debtors proposed a plan of reorganization. The plan proposed to pay the debtors' indebtedness to Sweetwater Production by transferring the "Silver Ranch" in full satisfaction of their obligation. After filing for bankruptcy, the debtors received court permission to incur a debt of $150,000.00 to pay for the construction of a city water line to its "Round Top Acres" subdivision. This post-petition debt was funded by Snyder and secured by a deed of trust. As part of the plan, the debtors proposed to repay this obligation from the cash proceeds from the future sale of lots at "Round Top Acres."

On September 11, 1984, prior to confirmation, the plan was modified. Under the terms of the modification, the debtors were free to develop the "Silver Ranch" minerals. If at the end of three years the property had not sold, the debtors would immediately convey this property to Sweetwater Production. At that time, Sweetwater Production would be free to market the property for the best price available. The modification then stated:

> If such sale is made, [Sweetwater Production] may then look to the other assets of Debtors for satisfaction of the balance of any deficiency after first giving Debtors thirty (30) days notice to propose a plan for liquidating its other assets to satisfy said deficiency.

With regard to the "Round Top Acres," the modification provided that the debtors would be free to develop and sell the same within the usual course of business without court approval of any sale unless the sale was of three or more lots to any one individual or business.

On September 20, 1984, the modified plan was confirmed. It provided that "all property of Debtors' respective estates is vested in Debtors free of claims of creditors, [and] equity security holders of other claimants."

On July 23, 1986, the debtors executed a document entitled Extension of Real Estate Note and Lien, and Snyder advanced them $150,000.00. This extension recited that it was taken in renewal and in extension of a prior $150,000.00 debt of July 1, 1985, which was secured by a deed of trust lien covering "Round Top Acres." In fact, the prior debt of July 1, 1985, had been paid. On January 14, 1988, the debtors and Snyder executed a "Correction Deed of Trust" to reflect that the $150,000.00 represented a new advance.

After the modified plan did not work, on June 23, 1988, the bankruptcy court ordered the debtors to propose a plan for liquidating their other assets to satisfy the deficiency of Sweetwater Production. On July 5, 1988, in lieu of foreclosure, the debtors deeded "Round Top Acres" to Farm Credit "subject to" any lien interest that Snyder might have.

Farm Credit, as the successor in interest to Sweetwater Production, claimed that the plan gave its lien priority over Snyder's lien. Snyder claimed that its post-confirmation lien had priority. The bankruptcy court held that it did not have jurisdiction to determine the validity of the post-confirmation debt and referred this matter to State court. At the trial court level, both Snyder and Farm Credit moved for summary judgment. The trial court entered an interlocutory summary judgment holding that Snyder had a superior lien. Farm Credit appeals from the order making the summary judgment final.

In its first two points of error, Farm Credit contends that the trial court erred in granting Snyder a summary judgment and in not granting Farm Credit's motion for summary judgment. In its third and fourth points of error, Farm Credit claims that Snyder's lien is void as a matter of law or, alternatively, that Snyder's lien is inferior to the interest of Farm Credit.

▮ When reviewing a summary judgment, this Court will adhere to the following standards:

> (1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law;

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

(3) Every reasonable inference must be indulged in favor of the non-movant, and any doubts resolved in its favor.

TEX.R.CIV.P. 166a; *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979). When both parties file motions for summary judgment, an appellate court determines all questions presented including the propriety of the order overruling the losing party's motion. *Jones v. Strauss*, 745 S.W.2d 898 (Tex.1988).

■ First, Farm Credit complains that the trial court erred because Snyder failed to support its motion for summary judgment with any proof to show that there were no issues of any material fact. However, TEX.R.CIV.P. 166a(c) provides that:

The judgment sought shall be rendered forthwith if ... the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file *at the time of the hearing* ... show that ... there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.... (Emphasis added)

Farm Credit seeks to limit Snyder's summary judgment proof to that evidence filed with the motion. We disagree with Farm Credit's attempt to limit the evidence the court could consider. Clearly, the rule states that the trial court is to look at the evidence that is on file on the day of the hearing. When both parties move for summary judgment, the trial court may consider the combined summary judgment evidence. *Woods v. Applemack Enterprises, Inc.*, 729 S.W.2d 328 (Tex.App.—Houston [14th Dist.] 1987, no writ). See *Nicholson v. Memorial Hospital System*, 722 S.W.2d 746 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Trinity Universal Insurance Company v. Patterson*, 570 S.W.2d 475 (Tex.Civ.App.—Tyler 1978, no writ).

■ Next, Farm Credit argues that Snyder's debt and lien are void because the debtors did not receive proper authority from the bankruptcy court to incur this additional debt. The issue is whether Snyder's post-confirmation debt is in compliance with the plan.

11 U.S.C.A. § 1141(b) (West 1979) provides: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." The plan specifically states that title to the property vests in the debtors. After confirmation, a debtor can manage its affairs without any further order of the court and without restriction on its activities except for any stipulations placed upon it by virtue of the plan. See *Alabama Fuel Sales Co., Inc. v. Newpark Resources, Inc.*, 45 B.R. 365 (Bankr.N.D.Ala.1985). After confirmation, the debtor is no longer a "debtor-in-possession" and may carry on as any other business subject only to the requirements stated in the plan. See *Lindsey v. MBank Alamo, N.A.*, 85 B.R. 397 (Bankr. W.D.Tex.1988); *Ford v. Independence Bank of Madison*, 61 B.R. 913 (W.D.Wis. 1986). Because this was a post-confirmation debt, the debtors did not need court permission to incur additional debt since this was not prohibited by the plan.

Next, we must determine if Snyder's post-confirmation debt was created in compliance with the plan and the order confirming the plan. See Section 1141(b). We have carefully reviewed the plan, the modification of the plan, and the order confirming the plan as modified. We find nothing that would prevent the debtors from incurring additional debt on the "Round Top Acres." Sweetwater Production was a party to the plan. Had the parties wanted to prevent the debtor-in-possession from pledging the property, they could have asked the bankruptcy court to insert such a provision in the plan. Moreover, there is evidence that $60,000.00 to $70,000.00 of the $150,000.00 borrowed from Snyder was used to pay the debt owed to Sweetwater Production.

Also, Farm Credit urges that the Snyder's lien is void because the extension of lien dated July 23, 1986, stated that its purpose was to renew and extend a debt of July 1, 1985. Because it was later determined that the July 1, 1985, debt had been paid in full, Farm Credit urges that a deed of trust securing a paid obligation is void. See *First Baptist Church of Fort Worth v. Baptist Bible Seminary,* 347 S.W.2d 587 (Tex.1961); *Sunbelt Service Corporation v. Vandenburg,* 774 S.W.2d 815 (Tex.App.—El Paso 1989, writ den'd); *Texas Bank & Trust Company of Dallas v. Custom Leasing, Inc.,* 402 S.W.2d 926 (Tex.Civ. App.—Amarillo 1966, no writ). Although this is a correct statement of the law, we disagree that this lien was given as security for a previously extinguished debt. The summary judgment proof shows that the $150,000.00 was a new advance of funds, and this fact is not controverted. TEX.R. CIV.P. 166a. The corrected deed of trust dated January 14, 1988, secures this debt.

The plan provided that the debtors could not sell more than three lots at a time to any one individual or business entity without court approval. Because the debtors pledged the entire "Round Top Acres," Farm Credit argues that this alienation is tantamount to a sale. Not finding any Texas authority to support its argument, Farm Credit urges that we consider the reasoning in *Feldman v. Urban Commercial, Inc.,* 165 A.2d 854 (N.J.Super.Ct.Ch. Div.1960). In *Feldman,* the Court stated:

> We recognize that, in form and under common law interpretation, a mortgage, in New Jersey, has been held to be in the nature of a "transfer or conveyance" of the *legal* title from the mortgagor to the mortgagee, subject to a re-vesting of title in the mortgagor upon payment of the mortgage. (Emphasis in original)

The reasoning in *Feldman* has not been followed by the Texas courts. In Texas, a deed of trust does not pass legal title, but only equitable title. See *Flag–Redfern Oil Company v. Humble Exploration Company,* 744 S.W.2d 6 (Tex.1987). A sale and a mortgage are not the same thing. *Norriss v. Patterson,* 261 S.W.2d 758 (Tex.Civ.App. —Fort Worth 1953, writ ref'd n.r.e.). In a deed of trust, the mortgagor conveys only the equitable title and retains the legal title. A sale transfers legal title. See *Flag–Redfern Oil Company v. Humble Exploration Company, supra.*

Appellant urges that the debtors should not be able to do indirectly by mortgage what they could not do directly by deed. Again, we must refer to the plan for direction. The plan contained no restrictions against further borrowing. There is no summary judgment evidence that the debtors incurred the debt with the intent of transferring title to three or more lots or even all of "Round Top Acres" to circumvent the plan. As a party to the plan, Sweetwater Production could have insisted on restraints against the debtors incurring post-confirmation indebtedness secured by liens on any of the debtors' property.

For the above reasons, we find from the summary judgment evidence that Snyder had a valid post-confirmation lien on "Round Top Acres" to secure the repayment by debtors of a note for $150,000.00.

■ Next, we will address Farm Credit's contention that the plan gave it an equitable lien against "Round Top Acres" that is superior to the security interest of Snyder. Farm Credit asserts that it has been granted a superior position because the modification provides that Sweetwater Production "may look to other assets" of the debtors for satisfaction of any deficiency.

Sweetwater Production was a secured creditor with regard to the "Silver Ranch." To the extent that the proceeds received from the sale of the "Silver Ranch" were insufficient to cover its debt, Sweetwater Production became an unsecured creditor as to that deficiency. It would be unlikely that a bankruptcy court would take Sweetwater Production's status as an unsecured creditor and elevate it to the posture of a secured creditor by giving it a lien against the "Round Top Acres," a property for which it previously held no security, in deference to other creditors of the estate. Rather, we believe that the clear meaning and intent of the modification language

"may then look to the other assets of Debtors" to be, that if a deficiency occurred, Sweetwater Production could then look to the other non-exempt assets of the debtors the same as any other unsecured creditor. In effect, the court was ordering that the Chapter 11 plan convert to a Chapter 7 liquidation in the event the plan failed. The summary judgment proof indicates that the only creditors of Parks–Walker Cattle Company, Inc. and Parks–Walker Land & Livestock Company, the debtors, were Sweetwater Production; Snyder's post-petition debt, which was paid; and the First National Bank of Lubbock, which was paid. After the sale of the "Silver Ranch," Sweetwater Production's status was not that of a secured creditor holding an equitable lien in "Round Top Acres" but that of the *sole* remaining unsecured creditor in the liquidation of the estate. However, that estate was further burdened by the post-confirmation debt owed to Snyder. In fact, when the plan did not succeed, the court in its "Order Requiring Debtor to Comply with Provisions Set Forth in Confirmed Plans" dated June 23, 1988, ordered a transfer of all of the debtors' non-exempt assets to Sweetwater Production. Farm Credit's first four points of error are overruled.

■ In its Points of Error Nos. 5 and 6, Farm Credit asserts that the trial court erred in holding that Farm Credit had no standing to question the reasonableness of the attorney's fees to be awarded Snyder under their loan documentation with the debtors. We agree. Because these fees are recoverable from the proceeds of the foreclosure of Snyder's lien against Farm Credit's property, "Round Top Acres," Farm Credit had standing to challenge their reasonableness.

The correction note dated January 14, 1988, provided that "[r]easonable attorney's fees shall be 10% of all amounts due unless either party pleads otherwise." In its pleadings, Snyder pled for "in the minimum" $15,000.00 by the terms of its note as well as additional fees against other parties who have been subsequently severed out of this action.

After the trial court entered an interlocutory summary judgment concerning Snyder's status as a lien holder, the parties, Farm Credit; Snyder; the debtors; and Tommie J. Mills, Inc. and Tommie J. Mills, Individually, (who have been severed out of this action) stipulated that the debtors are indebted as of February 14, 1989, to Snyder for $150,000.00 in principal and $40,154.00 in interest and that interest was accruing at a rate of $41.10 per day. Also, Snyder and the debtors stipulated to reasonable attorney's fees and expenses in the amount of $43,871.83 with additional fees in case of appeal. Farm Credit was not a party to the second stipulation. Based upon these stipulations and the interlocutory summary judgment, the trial court granted Snyder a final judgment. The trial court held that Farm Credit had no standing to question the reasonableness of the attorney's fees to be awarded Snyder under their loan documentation with the debtors.

Snyder points out that the contract for attorney's fees was between Snyder and the debtors, Parks–Walker Cattle Company, Inc. and Parks–Walker Land & Livestock Company. Therefore, there being no privity of contract between Farm Credit and the parties to the contract, Snyder asserts that Farm Credit has no standing to complain of the amount of attorney's fees. Snyder relies upon *Graham v. Turcotte*, 628 S.W.2d 182 (Tex.App.—Corpus Christi 1982, no writ), as authority. In *Graham*, the obligor of the note, after default and after threat of foreclosure, paid the bank the entire balance of the note. The note provided for 10 percent attorney's fees. When the bank's attorney and the obligor could not reach an agreement for fees less than the 10 percent, the bank agreed with the obligor to accept one-fourth of the amount claimed as attorney's fees. The obligor then sued the bank, alleging usury and several Texas Business and Commerce Code violations, and sued the bank's attorney for unreasonable attorney's fees. The bank was granted an instructed verdict, and the issue of excessive fees was sent to the jury. The jury found that the amount of $4,197.21 (25 percent of the 10 percent of the amount

owed on the note) was unreasonable and found that $300.00 would have been a reasonable fee. In *Graham,* the court said:

> In the instant case there are two agreements with respect to attorney's fees. First there is [obligors'] contractual agreement with the bank to pay attorney's fees and secondly, there is the bank's agreement with [the bank's lawyer] to pay attorney's fees. In neither instance are [the bank's lawyer] and [obligors] party to the same contract to pay attorney's fees.

Therefore, *Graham* held that the obligor of a note lacked standing to contest the attorney's fees charged by the bank's attorney because there was no privity of contract between the attorney and the borrower.

We find the holding in *Graham* to be in conflict with the holding of *F.R. Hernandez Construction & Supply Company, Inc. v. National Bank of Commerce of Brownsville,* 578 S.W.2d 675 (Tex.1979), in which the Court said:

> Texas Courts do not regard agreements to pay attorney's fees based on a percentage of the unpaid balance and interest on a promissory note as absolute promises to pay the contractual amount, but as contracts to indemnify the holder of the note for attorney's expenses actually incurred in collecting the principal and interest on the note. See, e.g., *Kuper v. Schmidt,* 161 Tex. 189, 338 S.W.2d 948 (1960); *Brannin v. Richardson,* 108 Tex. 112, 185 S.W. 562 (1916); *Lanier v. Jones,* 104 Tex. 247, 136 S.W. 255 (1911); *First National Bank v. Robinson,* 104 Tex. 166, 135 S.W. 372 (1911); *Highlands Cable Television, Inc. v. Wong,* 547 S.W.2d 324 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.); see 17 A.L.R.2d 288, 298 (1951) (collected authorities). *Consequently, the obligor of the note can challenge the reasonableness of contractual attorney's fees.* (Emphasis added)

In the recent case, *Goswami v. Metropolitan Savings and Loan Association,* 751 S.W.2d 487 (Tex.1988), an appeal from a summary judgment, the Supreme Court addressed this very issue of standing. The Court said:

> The issue of identifying who properly has standing to contest a foreclosure sale in Texas is well settled. As a general rule, only the mortgagor or a party who is in privity with the mortgagor has standing to contest the validity of a foreclosure sale pursuant to the mortgagor's deed of trust. *Estelle v. Hart,* 55 S.W.2d 510, 513 (Tex.Comm'n.App.1932, opinion adopted); *Mercer v. Bludworth,* 715 S.W.2d 693, 698 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). However, when the third party has a property interest, whether legal or equitable, that will be affected by such a sale, the third party has standing to challenge such a sale to the extent that its rights will be affected by the sale. *American Savings & Loan Assoc. v. Musick,* 531 S.W.2d 581, 586 (Tex.1976).

In the instant case, Farm Credit is the legal owner of "Round Top Acres" subject to the deed of trust lien of Snyder. Upon foreclosure of its lien, Snyder is entitled to recover from the proceeds of the sale its expenses, including reasonable attorney's fees in accordance with its contractual agreements with the debtors. Because Farm Credit's property interest will be affected by the sale, Farm Credit has standing to challenge the attorney's fees claimed by Snyder's attorney. Farm Credit's Points of Error Nos. 5 and 6 are sustained.

The judgment of the trial court is affirmed insofar as it granted Snyder recovery of the principal and interest due on its second debt. The judgment of the trial court is reversed insofar as it awarded $43,871.83 as attorney's fees and expenses, and that portion of the cause is remanded to the trial court for determination of the reasonableness of attorney's fees. See TEX.R.APP.P. 81(b)(1).

## ON MOTION FOR REHEARING

On motion for rehearing, Snyder argues that Farm Credit failed to properly plead the issue of attorney's fees as an affirmative defense and that, therefore, they are precluded from now urging that there is a

fact issue as to the reasonableness of attorney's fees. As authority for the proposition that unreasonableness of attorney's fees must be pled as an affirmative defense, Snyder cites *Spring Branch Bank v. Mengden,* 628 S.W.2d 130 (Tex.App.— Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Dicker v. Lomas & Nettleton Financial Corporation,* 576 S.W.2d 672 (Tex.Civ.App. —Texarkana 1978, writ ref'd n.r.e.); *International Shelters, Inc. v. Corpus Christi State National Bank,* 475 S.W.2d 334 (Tex.Civ.App.—Corpus Christi 1971, no writ).

These cases are distinguishable. In those cases the attorney's fees awarded were based on a fixed percentage of the unpaid balance of the note. Unlike the holder in those cases, Snyder is seeking recovery of "reasonable" attorney's fees in an amount which is far in excess of the percentage authorized by the note. Since it sought recovery of "reasonable" attorney's fees, Snyder had the burden of pleading and proving what would be a reasonable fee for the services rendered in collecting the note. *Yandell v. Tarrant State Bank,* 538 S.W.2d 684 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.), *affirmed on other grounds,* 561 S.W.2d 50 (Tex.Civ. App.—Fort Worth 1978, no writ). Reasonableness of attorney's fees in this situation is not an affirmative defense.

Snyder's motion for rehearing is overruled.