**AFFIRM; and Opinion Filed August 22, 2013.**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-11-00714-CV**

**MELVIN ALLARD LIPSITZ JR., Appellant**

**V.**

**MIKE MCCURLEY, CARMEN ELAINE EIKER, R. SCOTT DOWNING, AND MCCURLEY, ORSINGER, MCCURLEY, NELSON & DOWNING, L.L.P., Appellees**

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 11-16019**

**MEMORANDUM OPINION**

Before Justices Moseley, Bridges, and Lang-Miers
Opinion by Justice Lang-Miers

Appellees Mike McCurley, Carmen Elaine Eiker, R. Scott Downing, and McCurley, Orsinger, McCurley, Nelson & Downing, L.L.P. represented Marcie Kay Lipsitz, the former wife of appellant Melvin Allard Lipsitz Jr., during their divorce. Pursuant to court orders, Melvin paid Marcie's interim attorney's fees while the divorce was pending. Appellees ceased representing Marcie and intervened in the divorce seeking payment from Melvin of Marcie's unpaid attorney's fees. Melvin counterclaimed against appellees challenging the reasonableness and necessity of appellees' fees he had already paid as interim fees. Appellees nonsuited their claim against Melvin and filed a motion for summary judgment as to his counterclaims. The court granted appellees' motion and rendered a take-nothing judgment against Melvin. The court

severed the counterclaims from the divorce proceeding, and Melvin appeals, arguing that the trial court erred by granting appellees' motion for summary judgment. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm the trial court's judgment.

## BACKGROUND

After Melvin and Marcie were married, they signed a postmarital agreement setting out their respective marital property rights and spousal rights and obligations. Marcie agreed, among other things, to indemnify Melvin from liabilities and obligations she incurred in the past and in the future. Melvin agreed, among other things, to pay their and their children's living expenses as long as he and Marcie were married. Melvin and Marcie both agreed that if either incurred any liabilities for credit transactions that the party incurring the credit debt would satisfy it from that party's separate property and would indemnify the other party from the credit debt.[1]

---

[1] The agreement provided:

The Parties agree that their marital property rights and spousal rights and obligations shall be determined by this Agreement during the marriage, and that certain payments, along with the disposition of property and debts upon the dissolution of the Parties' marriage by divorce, annulment or death shall be in accordance with the terms of this Agreement.

Section VI of the agreement styled "Liabilities" stated:

All liabilities and obligations incurred solely by Wife in connection with Wife's separate property, whether incurred or arising before, on or after the date of this Agreement, shall be paid from, enforceable against and discharged solely from the separate property of Wife, and not from the separate property of Husband or from the Parties' community property, if any. Wife shall hold Husband and his property harmless from, and shall indemnify Husband against all liabilities and obligations of Wife which have been previously incurred or which will be incurred in the future. "Liabilities and obligations" include, but are not limited to, those that are contractual and noncontractual, contingent and noncontingent, known and unknown, tortious or nontortious, and any taxes attributable to Wife's property or income including, but not limited to, any penalties and interest associated therewith.

Section VII of the agreement styled "Future Credit Transactions" stated:

If either party enters into a transaction where credit is extended to that party or if either party is or becomes liable or obligated for the repayment of credit extended to a third party, then that obligation will be satisfied by the party incurring it solely from that party's separate property, and the party incurring the obligation will hold the other party and his or her property harmless from the obligation.

Section VIII of the agreement styled "Provisions for Support" stated:

As long as the Parties are married, Husband agrees to timely pay all the Parties' living expenses, including those of Husband, Wife and the Parties' children[.]

About nine years after they were married, Marcie filed for divorce from Melvin and filed a suit affecting the parent-child relationship (SAPCR) to determine conservatorship of their children. Appellees represented Marcie.

**Interim Attorney's Fees Under Postmarital Agreement**

In a series of interim orders in the case, an associate judge temporarily required Melvin to pay Marcie's attorney's fees up to various capped amounts. *See* TEX. FAM. CODE ANN. § 6.502 (West 2006), § 105.001 (West 2008). The orders specifically stated that the provisions about the temporary payment of attorney's fees were interim in nature and that both parties could make claims against the other for attorney's fees at the final trial, even for those fees that were paid pursuant to the judge's interim rulings. In addition, the orders authorized Melvin to pay the interim attorney's fees from any source or combination of sources available to him and to sell, liquidate, or borrow against property under his control to obtain the funds to pay the attorney's fees.

Melvin argued that Marcie's request that he pay her attorney's fees violated the provisions in the postmarital agreement requiring Marcie to indemnify him for her liabilities and to pay her own contractual obligations. Marcie responded that Melvin misconstrued the postmarital agreement. Melvin filed a motion for partial summary judgment arguing that the postmarital agreement was valid and enforceable. The parties submitted an agreed order to the district court, which the court signed, ruling that the postmarital agreement between Melvin and Marcie "is valid and enforceable."

The associate judge ruled that he could require Melvin to pay Marcie's interim attorney's fees without violating the postmarital agreement because the interim fees constituted "necessaries and temporary spousal support"; the postmarital agreement required Melvin to pay for Marcie's living expenses, and if the court did not "order interim fees," Marcie would not be

able to cover her living expenses; the postmarital agreement did not bar an order to pay attorney's fees in the SAPCR; and there were no provisions in the agreement prohibiting the payment of interim attorney's fees.

**Appellees' Intervention, Melvin's Counterclaim and Cross-Claim**

At some point, appellees withdrew from representing Marcie and later intervened in the divorce proceeding seeking payment from Melvin of Marcie's unpaid attorney's fees. Melvin counterclaimed against appellees for equitable relief asserting that the attorney's fees he had already paid to appellees on Marcie's behalf were not reasonable and necessary. Melvin also cross-claimed against Marcie for indemnity citing provisions of the postmarital agreement requiring Marcie to indemnify Melvin for her contractual and credit obligations.

**Melvin's Partial Summary Judgment**

Melvin moved for summary judgment on his cross-claim against Marcie for indemnity under the postmarital agreement, and the court granted the motion. The trial court ordered that Marcie was liable to Melvin "for contractual indemnity pursuant to the Postmarital Agreement . . . with respect to the claims asserted by [appellees] against Melvin[.]" The trial court ordered that Marcie was liable to Melvin for (1) any judgment or settlement amount that appellees recovered from Melvin for the claims asserted in their petition in intervention, (2) the attorney's fees and expenses Melvin incurred in defending against appellees' petition in intervention or in defending the partial summary judgment on appeal, (3) the attorney's fees Melvin incurred in prosecuting his contractual cross-claim against Marcie based on indemnity, and (4) interest and costs.

The trial court, however, reserved the determination of the amount of damages Marcie owed under the partial summary judgment and said the amount would "be determined in a

further order or judgment of this Court upon final motion, hearing or trial, as may be appropriate."

### Appellees' Summary Judgment

After the trial court ruled that Marcie was responsible for appellees' unpaid fees, appellees nonsuited their claims against Melvin and filed a combined no-evidence and traditional motion for summary judgment on his counterclaims. They argued, among other things, that Melvin's counterclaims did not state viable causes of action for equitable relief, he did not have standing to sue them because he was a third party who lacked privity with them, and he was collaterally estopped from challenging the reasonableness and necessity of Marcie's interim attorney's fees.

While the appellees' motion for summary judgment was pending, Melvin and Marcie settled their claims and controversies in a Mediated Settlement Agreement (MSA).[2] The trial court subsequently granted appellees' summary judgment motion "on all the grounds asserted therein" and dismissed "the entirety of Melvin Alard [sic] Lipsitz Jr.'s counter-claims[.]" The court then severed Melvin's counterclaims from the divorce proceeding, and Melvin filed this appeal arguing that the trial court erred in granting summary judgment in favor of appellees.

### STANDING

### Arguments of the Parties

Appellees contend that Melvin lacked standing to maintain his claims against them because the attorney's fees were incurred and owed by Marcie. They contend, among other things, that (1) although the fees Melvin paid them temporarily came out of his pocket, the trial court reserved Melvin's and Marcie's rights to "challenge their ultimate obligations" to pay the

_____
[2] Appellees cite the MSA in their brief on appeal. However, the MSA is not part of the summary judgment record and there is nothing in the record to show that the trial court considered the MSA in ruling on appellees' motion for summary judgment. As a result, we do not consider it on appeal.

attorney's fees at final trial; and (2) in granting the earlier partial summary judgment, the trial court "ultimately ruled that Melvin ha[d] no obligation to pay the fees" and that "the ultimate and final obligor" of the fees was Marcie, "thereby putting the fees in Marcie's debt column as a debt she owed to Melvin[.]"

In reply, Melvin argues that he had standing to challenge the reasonableness and necessity of the fees he paid to them because he suffered "a concrete and particularized injury" of an "overpayment of hundreds of thousands of dollars[,]" regardless of whether the legal services were ultimately for Marcie's benefit. Melvin argues that appellees "confuse the issue of standing with the issue of duty to pay for the attorney's fees." He also argues that his earlier partial summary judgment addressed only Marcie's obligation to indemnify him for any of his liabilities on appellees' claims in intervention, and that the partial summary judgment "says nothing" about Marcie's obligation to indemnify him for the fees he already paid pursuant to the temporary orders.

Melvin also contends that the cases appellees rely on do not apply because, although Marcie had the obligation to pay her attorney's fees under the postmarital agreement, the fees Melvin paid "were actually paid largely from separate property that belonged to Melvin" and he "ha[d] standing to challenge unreasonable fees that he was *personally* required to pay[.]"

### Standard of Review and Applicable Law

We review a trial court's summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Summary judgment is appropriate when the moving party establishes that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. When the trial court does not specify the grounds upon which it relied in granting summary judgment, as here, we will affirm on any ground that is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

–6–

Standing implicates a court's subject matter jurisdiction and is a constitutional prerequisite to maintaining a suit under Texas law. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993); *OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P.*, 234 S.W.3d 726, 735 (Tex. App.—Dallas 2007, pet. denied). A plaintiff has standing if, at every stage of the legal proceedings, a controversy exists between the parties. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). Whether a plaintiff has standing is a question of law that we review de novo. *Coons-Andersen v. Andersen*, 104 S.W.3d 630, 634 (Tex. App.—Dallas 2003, no pet.) (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)); *OAIC Commercial Assets, L.L.C.*, 234 S.W.3d at 735. In order to have standing, Melvin bore the burden of alleging facts that affirmatively demonstrate the court's jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *OAIC Commercial Assets, L.L.C.*, 234 S.W.3d at 735.

**Analysis**

We agree with appellees that Melvin did not have standing to maintain these claims against them. *See Double S Petroleum Ltd. v. Super Circle 7 Stores, Inc.*, No. 07-07-0278-CV, 2008 WL 4192709, at *3 (Tex. App.—Amarillo Sept. 12, 2008, no pet.) (mem. op.) (concluding party did not have standing to challenge attorney's fees award based on attorneys' contingency fee contract with another party); *Davis v. Davis*, No. 2-00-436-CV, 2003 WL 1564824, at *6 (Tex. App.—Fort Worth Mar. 27, 2003, no pet.) (mem. op.) (concluding appellant, in his capacity as trustee of a family trust, did not have standing to challenge award of attorney's fees assessed against him individually).

The postmarital agreement provided that Marcie would hold Melvin "and his property harmless from, and shall indemnify [Melvin] against all liabilities and obligations of" Marcie "which have been previously incurred or which will be incurred in the future." "Liabilities and obligations" included contractual liabilities. The agreement also provided that Marcie would be

liable for any "transaction where credit [was] extended" to her and that she would hold Melvin and his property harmless from that credit obligation. *See* BLACK'S LAW DICTIONARY 396 (8th ed. 2004) (defining "consumer credit" as "[c]redit extended to an individual to facilitate the purchase of consumer goods and services"). Under these terms of the postmarital agreement, the attorney's fees that Marcie incurred pursuant to her contract with appellees were her liabilities. *See Sheshunoff v. Sheshunoff*, 172 S.W.3d 686, 694 (Tex. App.—Austin 2005, pet. denied) ("[T]he Texas Legislature manifested a strong policy preference that marital property agreements should be enforced whenever persons who are married or intend to marry voluntarily enter into them."). And the court ruled that the postmarital agreement was valid and enforceable.

The trial court's earlier ruling on Melvin's cross-claim against Marcie that Marcie was liable to Martin "for contractual indemnity pursuant to the Postmarital Agreement . . . with respect to the claims asserted by Intervenors against Melvin" was based on and in accord with the terms of the postmarital agreement, which provided that Marcie's attorney's fees were her liability and she was ultimately responsible for indemnifying Melvin for amounts that he paid toward those fees. And although the associate judge determined that the postmarital agreement did not prohibit the court from awarding Marcie interim attorney's fees in the divorce suit and the SAPCR suit, he repeatedly stated in his orders that the temporary award of attorney's fees did not affect the parties' claims for attorney's fees at final trial and in the division of the marital estate. *See Marshall v. Marshall*, 735 S.W.2d 587, 597 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (concluding provision in agreed temporary order indicating the debts a spouse was responsible for during pendency of divorce case did not bind trial court in its division of debts and property after trial on the merits).

We also disagree with Melvin's argument—for which he cites no authority—that, because the fees "were actually paid largely from separate property that belonged to Melvin[,]"

he had standing to challenge these "unreasonable fees that he was *personally* required to pay[.]" The trial court's temporary orders stated that Melvin could pay the interim attorney's fees from any source or combination of sources available to him. And Melvin acknowledges that, while interim attorney's fees are generally paid with community property, "the trial court can also require the fees to be paid from the primary earner's separate property if needed." *Cf. Ferris v. Ferris*, No. 05-08-01705-CV, 2010 WL 5158444, at *5 (Tex. App.—Dallas Dec. 21, 2010, no pet.) (mem. op.) (involving temporary order that specified "that the interim fees and expenses be paid from community funds").

The two cases that Melvin cites as support for his argument that he has a "concrete and particularized injury" are distinguishable. *Congleton v. Shoemaker*, Nos. 09-11-00453-CV, 09-11-00654-CV, 2012 WL 1249406, at *5 (Tex. App.—Beaumont Apr. 12, 2012, pet. denied) (mem. op.), involved the determination of fees owed to a receiver appointed after entry of a divorce decree, and held that the trial court "abused its discretion in pre-setting the receiver's fee at 25%" because the record contained no evidence "establishing what percentage or amount constitutes a fair, reasonable, or necessary fee[.]" Additionally, *Farm Credit Bank of Texas v. Snyder National Bank*, 802 S.W.2d 709, 714–15 (Tex. App.—Eastland 1990, writ denied), concerned whether the owner of a property interest had standing to challenge attorney's fees awarded to a lien holder with a priority interest. In contrast, at issue here are interim attorney's fees paid pursuant to temporary court orders in a divorce proceeding and the effect of the terms of a postmarital agreement, a partial summary judgment declaring the postmarital agreement "valid and enforceable[,]" and a partial summary judgment decreeing the wife liable for her outstanding attorney's fees under the terms of the postmarital agreement.

We conclude that Melvin lacked standing to maintain these claims against appellees. Melvin's lack of standing is one ground upon which the trial could have based its order granting

appellees' motion for summary judgment and dismissing Melvin's counterclaims. Accordingly, we conclude that Melvin has not shown that the trial court erred. Because of our disposition of the issue of standing, we do not need to reach the remaining issues.

**CONCLUSION**

We affirm the trial court's order granting appellees' motion and dismissing Melvin's counterclaims.

/Elizabeth Lang-Miers/<br>ELIZABETH LANG-MIERS<br>JUSTICE

110714F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MELVIN ALLARD LIPSITZ JR., Appellant

No. 05-11-00714-CV      V.

MIKE MCCURLEY, CARMEN ELAINE
EIKER, R. SCOTT DOWNING, AND
MCCURLEY, ORSINGER, MCCURLEY,
NELSON & DOWNING, L.L.P., Appellees

On Appeal from the 301st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 11-16019.
Opinion delivered by Justice Lang-Miers,
Justices Moseley and Bridges participating.

      In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

      It is **ORDERED** that appellee Mike McCurley, Carmen Elaine Eiker, R. Scott Downing,
and McCurley, Orsinger, McCurley, Nelson & Downing, L.L.P. recover their costs of this appeal
from appellant Melvin Allard Lipsitz Jr.


Judgment entered this 22nd day of August, 2013.


/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE